Merrimack,
May 6, 1930.

BETTY CHIUCHIOLO *v.* NEW ENGLAND WHOLESALE TAILORS.

ANTONIO CHIUCHIOLO *v.* SAME.

*Robert W. Upton* and *Joseph C. Donovan* (*Mr. Upton* orally), for the plaintiffs.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Jonathan Piper* orally), for the defendant.

ALLEN, J. I. In respect to the defendant's negligence, one claim it makes is that it had no duty to anticipate an explosion of the gauge as a cause of injury to a person of normal health. It relies on the harmless outcome of previous explosions and asserts that due care neither demanded inquiry nor would have disclosed any danger to be guarded against if inquiry had been made. It admits that it is commonly known that sudden noise may startle one but denies that foresight will tell that the noise is likely to frighten one with serious consequences. And it is not questioned that if the danger had been anticipated, there were practical ways to obviate it. The removal of the boiler to another room or its enclosure by a partition may be mentioned as one remedy which would have been feasible and an effective removal of the danger.

The inquiry is therefore limited to the sufficiency of the evidence from which the duty to anticipate might be found. The defendant's argument generalizes persons and situations and makes but little

allowance for differences of degree and mental state. Much depends upon the environment and state of mind of the injured person. The range from things calculated merely to startle to things tending to inspire terror is wide, and differences in knowledge, warning, and mental balance mean differences of response to such things among those encountering them. To consider the illustrations suggested by the defendant, if the noise from the backfire of an automobile or from the blowout of a tire is not to be anticipated as likely to cause substantial disturbance, it is because it is such a common and well understood occurrence as to have no sufficient tendency to unduly alarm one, and it does not furnish occasion for thought about it. If a revolver fired in a theatre as an incident of the play is in keeping with the dramatics of the performance so as not to be out of order, it is an event of exciting entertainment which one generally goes prepared for. The hearer is not wholly off guard or likely to apprehend injury from it. The noise of a blowout of a fuse on an electric car, if it by itself may not be regarded as likely to be a frightening disturbance, yet if accompanied by a cloud of smoke, would seem more doubtfully a matter not to be guarded against. In *Lord* v. *Railway*, 74 N. H. 295, the blowout was accompanied by a sheet of flame, and the finding of a duty to anticipate against its effect on a passenger was upheld. While the passenger's action was not so much taken from fright as to escape injury, the same conduct inspired by fright might have been found a probable thing to have foreseen.

The noise here was sudden, loud, without warning, and accompanied by escaping steam from a boiler in the room where the plaintiff worked and not over ten feet from her. It is fairly an inquiry of fact, and not a matter of law, whether the exercise of care would have disclosed some tendency of an explosion of the gauge to inspire fright in the plaintiff with serious results to her, even if she was a woman in good health.

It seems to be claimed that the plaintiff was frightened only by the noise of the breaking of the glass of the gauge, but it may well be found that the noise and sight of the escaping steam combined with the breaking glass to produce the fright. The plaintiff's daze would permit the inference that she did not clearly and fully recall all the details of the affair, and it is natural to conclude that it was not the breaking glass alone that gave her her fright. The escaping steam findably contributed as a factor in causing her fright.

So far as fright alone is concerned, it may be noted that upon the explosion the other women and the manager who were in the room

all ran from it in their alarm. And as to the consequences of fright, it is well known that women in good health are varyingly affected by fright-producing occurrences. Ordinarily, susceptibility of temperament and an emotional nature are personal characteristics rather than tests of health, and what may have negligible effect on one may affect another injuriously in high degree.

If the defendant on careful thought would have come to the conclusion that among the help there might be one or more who were likely to be seriously affected through fright from such an explosion, then its failure to use such thought was a failure of its duty to anticipate. The evidence that the gauge had exploded ten or twelve times during a period of four years preceding the occasion in question was sufficient to warrant the inference that the defendant had notice of its tendency to explode and the consequent requirement to give care in considering the probable results of an explosion. That no such trouble had followed from previous explosions does not conclusively show that it was due care to pay no attention to future probabilities. And if upon anticipation and consideration of the likelihood of such consequences a careful employer would have taken precaution to avoid the occurrence, then the defendant's negligence would be established.

This is only an application of the test of duty to take care when the probable chances of injury are great enough to lead the ordinary man in the defendant's place to take measures to lessen or avoid the chances. When declaration is made that "Physical suffering is not the probable or natural consequences of fright, in the case of a person of ordinary physical and mental vigor" (*Ward* v. *Railroad*, 65 N. J. L. 383, 385), it does not meet the standard of precautionary duty as defined in this court. If the statement means that there is no probability of injurious consequences from fright, it assumes a matter of common knowledge which may not be accepted. If it means that the probabilities of such consequences are less than those that there will be no resulting injury, yet if there is enough probability of resulting harm that ordinary care will seek to avoid the danger, the use of such care is required although the balance of probabilities is against such consequences. *Tullgren* v. *Company*, 82 N. H. 268, 276; *Webster* v. *Seavey*, 83 N. H. 60; *Osgood* v. *Railroad*, 83 N. H. 262, 265.

II. In further claim against liability the defendant invokes the rule disallowing recovery for the consequences of fright caused by negligence when there is no physical impact. The standing of the

rule appears to be directly presented here for the first time. In *Lord
v. Railway*, 74 N. H. 295, a blowout of a fuse on an electric car was
followed by a sheet of flame which frightened a passenger and to
avoid which she jumped. Her effort to escape the danger of being
burned was seemingly made regardless of her fright, and the case is
not properly in point, although sometimes cited to such effect. In
*Kenney v. Len*, 81 N. H. 427, it is said in the opinion that if immedi-
ate physical injuries resulting from negligence and induced by some
form of fright is shown, there may be recovery for subsequent in-
jurious consequences. But this statement was unnecessary in the
determination of the case as the facts were of physical contact with
a revolting object causing immediate suffering through the medium
of the fright it produced, and the case cannot be regarded as author-
ity for the allowance of recovery for the consequences of fright when
there is no external force of impact or external agency of contact.

In this latter case there was a somewhat disparaging discussion
of the rule against recovery, and further consideration leads to the
conclusion that it has insufficient merit to prevail over a rule allow-
ing recovery. As making an exception to usual principles of recov-
ery, the rule against recovery must bear the burden of proof as against
the allowance of recovery, to sustain its merit and validity. While
there is much authority, and possibly a weight of it, in favor of the
rule, many cases support it on untenable grounds.

In some of the early cases in which the rule against liability is
adopted it is suggested that there were no precedents for a rule of
liability. Aside from the simple answer that at the time these cases
were decided there were no precedents against liability, the argu-
ment would appear to be based upon a misconception of the normal
principles for the allowance of damages in actions for personal in-
juries caused by negligence. Among the elements of damage for
which allowance is to be given is injury to health if it is a proximate
result of the negligence. And if such injury results proximately
although through the intermediate agency of fright, it follows that
the absence of reported cases does not show that there is no liability
therefor. If general legal principles impose such liability, the denial
of liability must be an exception to the application of the principles.
What these cases really did was to establish a new rule of exceptional
character rather than enforce a rule already established.

Some cases take the view that the consequences of fright are too
remote from the negligent act to be caused by it. Others adopt the
reasoning that since there can be no recovery for fright, there can

be none for its consequences. The question of remoteness in all such cases may be, and usually is, one of fact, and if fright is a link in the chain of causation, non-liability for fright clearly does not show freedom from liability for its consequences. It would be equally reasonable to say that because there is no liability for a scratch harmless of itself, there is none if it becomes infected and thus leads to serious consequences.

It is argued that there should be some physical impact to guarantee the reality of the cause of the injuries suffered. This is understood to be only an expressive way of saying that there should be reasonable proof of causal relation between the negligence and the injuries, and that physical impact is an essential of such proof. But if without the impact the causal relation is shown to one's reasonable satisfaction in making deductions and inferences, then impact is not such an essential.

Cases supporting the rule against liability on these grounds are therefore not fairly to be regarded as authority to follow. The reasons failing, the rule fails.

The only possibly adequate reason suggested for the exception to the rule of liability is that of expediency, and the argument is made that in the long run justice will be better promoted with rather than without the exception, because otherwise "this would open a wide door for unjust claims, which could not successfully be met." *Spade* v. *Railroad*, 168 Mass. 285, 290.

From the viewpoint of analogy, allowance for mental pain, and for injury to mind and nerve as well as body, is given as items of damage in all cases of liability for personal injury where there is impact. It would seem practically as easy to pretend them and as difficult to disprove them in such cases as in cases where there is no impact and fright is the intervening agency of transmittal. When neurasthenia is claimed as a result of a bodily injury, the connection between the injury and the disease and the extent and severity of the disease are no less uncertain and subject to objective tests than when fright takes the place of bodily impact. It is true that the fright itself may be an issue not easily to be challenged and met, but this does not seem to be of sufficient importance and to furnish sufficient reason to lay down a rule shutting out recovery for its consequences in all cases.

In passing on the evidence the difficulty of disproof may be argued as impairing or destroying proof. In principle testimony is more cautiously accepted if there is no way of checking it. But if this

seems of slight avail and it is to be conceded that our procedural system for the ascertainment of truth is inadequate to defeat fraudulent claims in these cases, the result is a virtual acknowledgment that the courts are unable to render justice in respect to them. Justice fails because it cannot be administered with reasonable certainty. Acceptance of such a premise is to be given only if it seems clear and free from doubt. It is not to be taken for granted.

The institution and maintenance of suits for false claims is recognized, but to what extent in comparison with honest ones is not a matter of judicial notice; nor is it a matter of such notice in what measure false claims are successful. To hold that all honest claims should be barred merely because otherwise some dishonest ones will prevail, is not enough to make out a case of public policy.

It is doubtless true that the subject should be treated largely and broadly from the standpoint of practical judgment. In the nature of things it is impossible to reach any very certain conclusions. The successful assertion of a false claim gives it the appearance and standing of an honest one, and it may not be said with any reasonable measure of reliance how far fraud will be attempted and accomplished. But the uncertainty about it gives good reason not to assume its prevalence to the extent that to overcome it honest claims should also be defeated.

It is fair to take the position today that one should not carelessly frighten another if the fright is likely to, and does, result in harm to body or health. Medical science informs us that fear and fright are at the bottom of many ailments and distresses. A rule that it is lawful carelessly to frighten another regardless of the consequences and provided impact is avoided, does not seem responsive to a fair sense of justice. If a sudden explosion by its noise makes one deaf or by its light makes one blind, there may be recovery. If instead the shock is so frightening as to produce impairment of health in other ways, the denial of liability therefor must be supported by stronger evidence of the requirement of expediency therefor than has been presented.

If the subject has not caused undue judicial alarm over the prospect of a multitude of actions for pretended injuries or pretended causes of trouble obscure in their nature and not readily tested objectively, it is at least a doubtful issue in which the burden of showing good reason for the denial of liability is not sustained. That it may be wise and better to have such a rule is the most that is shown. This falls short of making out a case for it.

III. Exception was taken to an instruction that the jury might find that the defendant should have installed another type of gauge on the boiler. There was evidence that an automatic gauge was in common use which on a breaking of the glass shut off the escape of steam. The noise of the explosion would be as loud as of an explosion of the gauge used, but the ensuing noise and sight of escaping steam would be prevented. It has already appeared that this ensuing noise and the sight of the volume of escaped steam might be found to have united with the noise of the breaking of the glass to cause the plaintiff's fright, and it was proper to submit the use of an automatic gauge as a measure in the exercise of care in avoidance of the fright. That the explosion in the mere breaking of the glass without the noise and sight of the escaping steam would have given the plaintiff the same and as great fright with the same and as serious consequences was not demonstrated. It is not a necessary finding that there would have been any injury if the defendant had used the automatic type of gauge.

IV. Exception was also taken to the refusal to give an instruction that "if reasonable men would not have anticipated that anyone would have been so frightened as to suffer injury," there was no liability. In the main charge this requested instruction was given. Subsequently and after the defendant excepted to the denial of such requests as were not granted, the instruction was given that if reasonable men would not have thus anticipated, the jury were to pass on the defendant's negligence "under such circumstances."

The plaintiffs say that the defendant did not properly except to the instruction as finally given, because specific objection to it was not taken so as to call the court's attention to its variance from the requested instruction. This point needs but little notice. The court deliberately modified its own prior instruction, which so closely followed the wording of the requested instruction as to show a definite purpose in the first instance to grant it. Under the circumstances the modification clearly shows that the court had it in mind when the final instruction was given, that it was in conflict with the requested instruction.

The plaintiffs further say that the instruction given was not erroneous, upon the theory that there may be a duty to anticipate fright regardless of its consequences, although there may be no liability unless there are such consequences. The argument defies logic. It assumes a legal duty the breach of which imposes no liability. If there is no liability for fright, there can be no wrong in

causing it, and there can be no duty to anticipate and avoid it. It may be an exercise of ordinary care to avoid it, but the exercise of care is not always a legal duty. One is not required to anticipate against dangers which it is not his duty to avoid.

One has no absolute right not to be frightened by another. It is only under certain conditions that the right exists, and carelessness as the cause is not a violation of the right in the absence of other damage and physical impact. There is no breach of duty unless a corresponding right is violated. The defendant therefore had no duty to avoid frightening the plaintiff unless reasonable anticipation would have shown that the fright was likely to have such consequences as to call for its avoidance.

There may be anticipation of fright when serious results of the fright are not probable enough to give them foreseeable attention. The probability of fright and the probability of harm from it are not the same. Objectively the circumstances and subjectively the tendencies of the person frightened vary so greatly that it would be an arbitrary rule contrary to fact and reason to hold that if one should anticipate fright, he should also anticipate whatever results happen to flow from it. Just as the call for care is more insistent when the prospects of serious results are clear, so the prospects may be so slight as to call for no measures of avoidance. The conduct of the ordinary man varies according to the factors presented, and the general principle that such conduct as a standard is an issue of fact rather than of law is here applicable. Upon the facts it was not for the court to say that without anticipation of injurious results from the fright there might be liability for them.

Considered from the standpoints both of negligence and damages, anticipation of adverse results from carelessness does not establish a duty to be careful unless the results to be foreseen include harm to body or health. The particular form of such harm may not be foreseen but harm of such a character is essential to impose the need of precautionary attention and action.

Authority is believed to be uniform to the effect that there is no liability for carelessly causing mental pain and suffering without other injury, at least if there is no bodily impact. In 23 A. L. R., n., 365-372, a large number of cases are cited going to this extent, if not farther. The cases cited by the plaintiffs appear to be either of wilful injuries or of injuries of which mental pain and suffering were not the only elements.

If the rule is founded on policy, the argument for expediency, re-

garded as unsustained in cases of fright resulting in serious consequences, is maintained when there are no such consequences. A rule of liability would impose undue burdens and go beyond the practical needs of recovery for another's negligence. When there are no consequences of fright, the fright can be regarded only as a momentary and transient disturbance, and as either too lacking in seriousness or as giving too great an extension of legally wrongful conduct to warrant the imposition of liability. In the contacts of life and experience suddenness of action in conduct, noise, light, and otherwise is an incident of numberless frequency, and to subject each instance to the test of care when fright alone is shown would carry liability to an impractical, unwise and unjust range. Social order neither requires nor expects it.

The requested instruction correctly stated the law and its final denial was error.

V. The remaining exceptions do not appear to require attention. If not waived, they depend upon a state of evidence which may be different upon another trial.

*New trial.*

All concurred.