Board of Claims
No. 89-422

JAMES THORPE

v.

STATE OF NEW HAMPSHIRE, DEPARTMENT OF CORRECTIONS, & a.
(New Hampshire Board of Claims)

May 24, 1990

*Backus, Meyer & Solomon*, of Manchester (*Jon Meyer* on the brief and orally), for the plaintiff.

*John P. Arnold*, attorney general (*Claire L. Gregory*, assistant attorney general, on the brief, and *Douglas Jones*, assistant attorney general, orally), for the State.

THAYER, J.  The plaintiff, James Thorpe, brought an action against the New Hampshire Department of Corrections and the New Hampshire Division of Public Health Services (the defendants), alleging they were negligent in erroneously diagnosing, treating and counseling him for syphilis, and claiming, *inter alia*, damages for emotional distress. Following a hearing before the New Hampshire Board of Claims (the Board), the plaintiff was awarded $2,000 for unnecessary treatment and counseling and $4,000 for emotional dis-

tress. The defendants appeal the emotional distress award, arguing that the Board erred as a matter of law in awarding the plaintiff damages, where he did not claim any physical injury and did not present expert testimony on the issue of proximate cause or physical manifestations of emotional distress. For the following reasons, we reverse.

The facts are as follows. James Thorpe was arrested in August, 1987, and was incarcerated in the New Hampshire State Prison. On August 9, 1987, he was given a routine test for syphilis that the prison administers to all new inmates or detainees. On August 20, 1987, a physician's assistant informed Mr. Thorpe that he had tested positive for syphilis, and that same evening the plaintiff was brought to the infirmary and treated for the disease. The treatment consisted of two penicillin shots, along with oral medication to facilitate the absorption of the penicillin. On September 2, 1987, Ms. Percival, a disease intervention specialist, met with the plaintiff to discuss the manifestations of syphilis, the means of transmittance and the treatment for the disease. She told him that his wife would have to be notified that she may have been exposed to syphilis, and that either Mr. Thorpe or the division of public health services could contact her. The plaintiff attempted to call his wife himself, despite court orders prohibiting such contact. He was unable to inform her that he had been diagnosed as having syphilis because she hung up on him. He then contacted other members of his family, however, and asked them to advise his wife to get tested. The division of public health services did not notify Mr. Thorpe's wife of her possible exposure.

About an hour after meeting with Mr. Thorpe on September 2, Ms. Percival was informed that he did not in fact have syphilis. She immediately instructed the prison to convey this information to the plaintiff. Mr. Thorpe testified, however, that he was not told he did not have syphilis for up to a week after he met with Ms. Percival.

The plaintiff brought suit in the board of claims, alleging *inter alia*, that he suffered emotional distress as a result of the defendants' erroneous diagnosis, treatment and counseling for syphilis. During the hearing before the Board, Mr. Thorpe testified that he was "devastated" and "very depressed" after he was told he had syphilis because he had "never had a social disease in [his] life." This was the only testimony offered by the plaintiff concerning the emotional distress he had suffered as a result of the defendants' errors. On cross-examination, Mr. Thorpe was asked whether he "had suffered any . . . physical manifestations or symptoms as a result of the

episode involving syphilis. . . ." The plaintiff answered "no." He was then asked whether he had filed any request slips with the prison indicating he was suffering any physical manifestations or symptoms. Mr. Thorpe responded that he had filed request slips indicating he was suffering from "severe stomach problems and psychological problems." These request slips were not included in the record, and the plaintiff testified that he was not sure of the date when the stomach problems began. He conceded that no definitive diagnosis has ever been made establishing the source of his stomach problems.

In response to two separate questions, Mr. Thorpe testified that stomach problems were the only physical manifestations he claimed to be suffering as a result of the misdiagnosis, treatment and counseling. However, in answer to questions posed by the Board, the plaintiff also indicated that he had a hiatal hernia which he believed was partly related to the stress he was suffering from being told he had syphilis. Mr. Thorpe also said that, in his opinion, the hernia may have been caused by the treatment he had received.

The plaintiff offered no expert testimony that the misdiagnosis, treatment and counseling proximately caused him to suffer emotional distress. In addition, he offered no expert testimony that he experienced any physical manifestations from the emotional distress.

Following the hearing, the board of claims awarded Mr. Thorpe $4,000 in damages for emotional distress. The Board found that "the defendants acted negligently in diagnosing Thorpe as having syphilis. As a direct consequence of that misdiagnosis, Thorpe underwent unnecessary treatment and counseling and suffered emotional distress. There were some physical manifestations of the emotional problems including stomach upset." The defendants duly filed a motion for reconsideration, *see* RSA 541-B:10, IV (Supp. 1989); RSA 541:3, which the Board denied, *see* RSA 541:5. Pursuant to RSA 541:6, the defendants appealed the decision of the board of claims to this court.

The first issue we will address is whether or not the plaintiff must prove that the mental distress manifested itself through physical symptoms. The law in New Hampshire is well established that the specific circumstances under which a plaintiff may recover damages for emotional distress are limited by the doctrine of foreseeability. *See Corso v. Merrill*, 119 N.H. 647, 651–52, 406 A.2d 300, 303 (1979); *Chiuchiolo v. New England &c. Tailors*, 84 N.H. 329, 337, 150 A. 540, 544 (1930). In *Chiuchiolo* we determined that a plaintiff could re-

cover damages for mental distress under a theory of negligence only if he or she suffered physical symptoms as a result of the emotional distress. *Chiuchiolo*, 84 N.H. at 337–38, 150 A. at 544–45. This court expounded on the negligence theory in *Corso*, wherein we stated:

"The emotional harm . . . cannot be insignificant. Recovery is not to be permitted for 'mere upset, dismay, humiliation, grief and anger.'

The emotional harm must be a painful mental experience with lasting effects. . . . In other words, the harm for which plaintiff seeks to recover must be susceptible to some form of objective medical determination and proved through qualified medical witnesses."

*Corso*, 119 N.H. at 652–53, 406 A.2d at 304 (citations omitted). Mr. Thorpe argues, based on *Chiuchiolo*, that damages for mental distress are given in all cases of liability for personal injury where there is impact, and that it is unnecessary to prove he suffered physical consequences from the distress. He alleges that the penicillin injections constituted unwarranted impact, rendering the physical manifestations requirement irrelevant. While the plaintiff may be correct that the shots established impact, he did not charge the defendants with liability for personal injury; hence, he cannot recover based on the rule enunciated in *Chiuchiolo*. *See Chiuchiolo*, 84 N.H. at 334, 150 A. at 543. Mr. Thorpe also makes alternative arguments that he is entitled to recover damages for emotional distress without having to prove that he suffered physical consequences. In light of our holding that he is required to prove physical manifestations of his distress, we need not address each argument.

■ The plaintiff points out that while he is claiming emotional distress as an element of damages under a traditional negligence theory, the *Corso* case involved a claim for negligent infliction of emotional distress suffered by a bystander in response to the occurrence of physical injury to another person. *Corso*, 119 N.H. at 650, 406 A.2d at 302. The analysis in *Corso*, however, was based on traditional negligence principles, *id.* at 657, 406 A.2d at 307–08, and is therefore applicable to this case. In addition, it is widely held in other jurisdictions that damages cannot be recovered for emotional distress unless the distress manifests itself through physical symptoms. *See Petition of United States*, 418 F.2d 264, 268 (1st Cir. 1969); *Chriss v. Manchester Insurance & Indemnity Co.*, 308 So.2d 803, 805 (La. App. 1975); *Daley v. LaCroix*, 384 Mich. 4, 12–13, 179 N.W.2d

390, 395 (1970); PROSSER, HANDBOOK OF THE LAW OF TORTS, ch. 9, 328–29 (4th ed. 1971). Therefore, we conclude that before a plaintiff can recover damages for emotional distress pursuant to a negligence cause of action, he or she must prove that physical injury resulted therefrom.

■ We must next decide whether or not expert testimony is necessary to prove that a plaintiff suffered physical consequences associated with the emotional distress, and that the emotional distress claimed was proximately caused by the defendant's negligence. The general rule in medical malpractice cases is that the proximate cause between the negligence and the injury must be established through expert testimony. *Martin v. Wentworth-Douglass Hosp.*, 130 N.H. 134, 136, 536 A.2d 174, 175–76 (1987) (citing *Carson v. Maurer*, 120 N.H. 925, 934, 424 A.2d 825, 832 (1980)). This rule applies if "any inference of the requisite causal link must depend on observation and analysis outside the common experience of jurors. . . ." *Martin*, 130 N.H. at 136, 536 A.2d at 175; *see Bentley v. Adams*, 100 N.H. 377, 379, 128 A.2d 202, 204 (1956) (medical testimony not necessary when circumstances fall within realm of common knowledge). Based on common experience, jurors may determine that being misdiagnosed and treated for syphilis would lead a person to become upset. However, we hold that medical expert testimony was required in this case to prove that the defendants' negligence proximately caused Mr. Thorpe's emotional distress, which was manifested through stomach problems and/or a hiatal hernia. *See* RSA 507-E:2 (Supp. 1989) (in any action for medical injury, plaintiff must prove through expert testimony that medical care provider was negligent and that as a result, plaintiff suffered injuries that otherwise would not have occurred).

■ We held in *Corso*, as quoted above, that expert testimony is required to prove that the plaintiff suffered physical manifestations of the emotional distress which was caused by the defendant's negligence. *Corso*, 119 N.H. at 653, 406 A.2d at 304. Although Mr. Thorpe questions our reliance on *Corso* because of the different causes of action involved, we note that in one of the cases on which the *Corso* decision was based, the cause of action was negligence, and not negligent infliction of emotional distress. *See Petition of United States*, 418 F.2d 264, 267–69 (1st Cir. 1969) (recovery may be had for physical consequences of mental distress only if physical manifestation susceptible to objective determination). Moreover, this observation was noted by the Court of Appeals for the First Circuit, which has

recently interpreted *Corso* to conclude that *"Corso's* medical proof requirement [is not] limited to the so-called 'parental bystander' cases. Not only does *Corso's* self-proclaimed adoption of a 'traditional negligence approach' to these cases belie this position, but the cases *Corso* cites in support of the medical proof requirement are not limited to such cases. . . ." *Duford v. Sears, Roebuck and Co.,* 833 F.2d 407, 413 (1st Cir. 1987); *see Nichols v. Estabrook,* 741 F. Supp. 325, 327 (D.N.H. 1989) (court relies on *Corso* to hold that in negligence case, emotional harm must be accompanied by objective physical symptoms proved through competent medical testimony). *But see Lunt v. Philbrook,* 59 N.H. 59, 60 (1879) (father permitted to recover for emotional distress after learning of daughter's seduction absent expert testimony). Based on the weight of authority, we hold that when damages for impact are not sought, expert testimony is required to prove that the plaintiff experienced physical symptoms from the alleged emotional distress.

■ Mr. Thorpe argues that even if expert testimony is required to prove that he suffered physical symptoms and to prove causation, this rule of law should be limited to the superior court and should not apply to proceedings before the board of claims. As support for his argument, the plaintiff points out that the Board conducts more informal and expeditious proceedings than the superior court, and is not bound either by common law or by statutory rules of evidence. *See* RSA 541-B:10 (Supp. 1989). While proceedings before the Board may be less formal than those in the superior court, the plaintiff has referred us to no authority, and we are aware of none, stating that the evidentiary requirement should vary depending upon the degree of formality required by the forum. Hence, we hold that expert testimony is required in all negligence cases where emotional distress damages are claimed, regardless of the forum in which the case is litigated.

■ We similarly reject the plaintiff's final argument that this case should be remanded, and not reversed, because the State did not claim, until after the close of testimony, that Mr. Thorpe was required to present expert testimony. Since there is no requirement that a defendant notify a plaintiff as to the manner of proof at trial, we are not persuaded by this argument.

■ Mr. Thorpe testified at the hearing that he suffered stomach problems and possibly a hiatal hernia in response to the defendants' misdiagnosis, treatment and counseling. However, he failed to pre-

sent expert testimony to prove either that he did, in fact, suffer from these injuries, or that the defendants' actions proximately caused his emotional distress. Accordingly, we reverse the Board's order awarding the plaintiff $4,000 for emotional distress.

*Reversed.*

SOUTER, J., did not sit; the others concurred.