[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 01-14786

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 11, 2002
THOMAS K. KAHN
CLERK

D. C. Docket No. 90-00228 CV-AAA-5

BENJAMIN D. JONES,

Plaintiff-Appellant,

versus

CSX TRANSPORTATION,

Defendant-Appellee.

_____

No. 01-14787

_____

D. C. Docket No. 91-00226 CV-AAA-5

JAMES EMERY O'STEEN,

Plaintiff-Appellant,

versus

CSX TRANSPORTATION,

Defendant-Appellee.

---

Appeals from the United States District Court
for the Southern District of Georgia

---

**(April 11, 2002)**

Before TJOFLAT and COX, Circuit Judges, and HANCOCK[*], District Judge.

COX, Circuit Judge:

Benjamin D. Jones and James Emery O'Steen ("the plaintiffs") sued CSX Transportation, Inc. under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, for personal injuries allegedly sustained as a result of their exposure to asbestos. The district court entered partial summary judgment in favor of CSX on the plaintiffs' claims for emotional distress damages based on their fear of contracting cancer. The district court also denied the plaintiffs' motion for a new trial challenging the jury's comparative negligence finding. Because the plaintiffs made no showing of any objective manifestations of their emotional distress, and because we find no abuse of discretion in the district court's denial of their motions for a new trial, we affirm.

---

[*]Honorable James H. Hancock, U.S. District Judge for the Northern District of Alabama, sitting by designation.

## I. Background

The plaintiffs were employed by CSX in various capacities for many years, during which they worked with and around products containing asbestos. The plaintiffs sued CSX and several other defendants, alleging among other things negligence on the part of CSX, and seeking damages under the FELA as a result of that negligence for physical injuries to their respiratory systems and emotional distress from their fear of contracting cancer.[1] Over the lengthy course of the proceedings, all of the other defendants either settled or were dismissed, leaving CSX as the sole remaining defendant. Prior to trial, CSX filed a motion seeking partial summary judgment on the plaintiffs' claims for emotional distress damages. The sole ground advanced by CSX for partial summary judgment was the plaintiffs' failure to show an objective manifestation of their emotional distress.[2] Agreeing with CSX that the plaintiffs were required to demonstrate some objective manifestation of their fear

[1]The plaintiffs seek recovery for emotional distress as an element of damages resulting from CSX's negligence in exposing the plaintiffs to asbestos. The complaints contain no independent tort claims under the FELA for negligently inflicted emotional distress, nor do they contain any state law tort claims against CSX.

[2]CSX's motions argued that "[b]ecause . . . none of the instant Plaintiffs has shown an 'objective manifestation' of their alleged fear of cancer, [CSX] respectfully submits that it is entitled to summary judgment on this issue. . . ." (Appeal No. 01-14786, R.1-44 at 1; Appeal No. 01-14787, R.2-43 at 1.)

of contracting cancer, and finding that they failed to do so, the district court granted CSX's motion.

The cases proceeded to trial on the plaintiffs' remaining claims against CSX, at which several medical experts testified about the plaintiffs' respiratory problems. Two medical experts opined that Jones suffered from asbestosis, an asbestos-related disease, and one medical expert gave a similar opinion with regard to O'Steen. Three other medical experts, however, opined that Jones did not suffer from an asbestos-related disease, and four medical experts opined that O'Steen did not suffer from an asbestos-related disease. Additionally, several of the physicians, including all of those called by the plaintiffs, testified that both of the plaintiffs had a significant smoking history that could have caused or contributed to their respiratory problems. Jones smoked between half a pack and a pack and a half a day for a total of thirty-three years, and O'Steen smoked up to a pack a day for approximately twenty-five years.

The jury returned verdicts finding that CSX had been negligent and that such negligence caused injury to both Jones and O'Steen. The jury additionally found, however, that each of the plaintiffs had been negligent and that their own negligence also caused their respective injuries. The jury attributed 5% of each of the plaintiffs' injuries to CSX, the remaining 95% in each case being attributed to the plaintiff

4

himself. The jury found Jones's total damages, without adjustment for comparative negligence, to be $46,215, and it found O'Steen's total damages, without adjustment for comparative negligence, to be $37,595.[3]

The district court subsequently entered judgment on the jury's verdicts. After reducing by 95% the amounts found by the jury for each of the plaintiffs, the district court awarded $2,310.75 to Jones and $1,879.75 to O'Steen. The plaintiffs moved for a new trial, asserting among other things that the jury's findings that Jones and O'Steen were 95% negligent were contrary to the evidence, were against the weight of the evidence, and resulted from mistake or prejudice. On the same day that the plaintiffs filed these motions, CSX filed a motion to amend the judgments by offsetting the amounts awarded to the plaintiffs by their combined settlements with the other defendants, who allegedly were CSX's joint tortfeasors. The district court denied the plaintiffs' motions for a new trial and granted CSX's request to offset the judgments. The court then entered an amended judgment awarding Jones $2,319.82 in costs and $0 in damages, and an amended judgment awarding O'Steen $3,727.46 in costs and $0 in damages.

---

[3] The special interrogatories answered by the jury asked: " . . . [W]hat sum of money do you find from a preponderance of the evidence to be the total amount of the Plaintiff's damages without adjustment by application of any percentages you may have given in the answer to Question No. 3 [concerning comparative negligence]?" (Appeal No. 01-14786, R.16-97 at 2; Appeal No. 01-14787, R.13-103 at 2.)

On appeal, the plaintiffs challenge the district court's grant of partial summary judgment in favor of CSX on their claims for damages based on their fear of cancer, as well as the district court's denial of their motions for a new trial.

## II.  Standard of Review

We review de novo the grant of partial summary judgment, applying the same standards as the district court.  *See O'Neal v. United States*, 258 F.3d 1265, 1270 (11th Cir. 2001).  We review the district court's denial of a motion for a new trial for abuse of discretion.  *See Lambert v. Fulton County*, 253 F.3d 588, 595 (11th Cir. 2001).

## III.  Discussion

### A.  *Denial of New Trial Motions*

The plaintiffs contend that the court should have granted their motions for a new trial because the jury's finding that they each were 95% comparatively negligent was against the great weight of the evidence, was contrary to the evidence, and was the result of mistake, prejudice or compromise.  CSX, however, argues that the plaintiffs waived review of this issue by not filing with the district court a motion for judgment as a matter of law on comparative negligence.  Alternatively, CSX asserts that there was ample evidence to support the jury's comparative negligence finding.  Having considered the plaintiffs' arguments as to this issue in light of the record, we

6

find no abuse of discretion and affirm the district court's denial of the motions for a new trial without further discussion. *See* 11th Cir. R. 36-1.

### B. *Partial Summary Judgment Regarding Fear of Cancer*

Additionally, the plaintiffs contend that the district court erred in granting partial summary judgment on their claims for damages based on their fear of contracting cancer. Specifically, the plaintiffs assert that their recovery for emotional distress is allowed by the Supreme Court's decision in *Metro-North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 117 S. Ct. 2113 (1997), which held that a worker exposed to asbestos could not recover for negligently inflicted emotional distress based on his fear of contracting cancer until he exhibited symptoms of a disease. The plaintiffs argue that they have exhibited symptoms of an asbestos-related disease, i.e. asbestosis, and therefore may recover for their fear of cancer under *Buckley*. The plaintiffs also argue that, because *Buckley* contains no requirement that a plaintiff show objective manifestations of his emotional distress, the district court erred in requiring the plaintiffs to make such a showing. CSX, on the other hand, argues that the plaintiffs cannot recover for their fear of cancer until they exhibit symptoms of cancer itself. Additionally, CSX maintains that the district court correctly required a showing of objective manifestations of the plaintiffs' emotional distress.

We are thus presented with two questions related to the plaintiffs' ability to recover for their fear of contracting cancer. First, we are asked to decide whether the Supreme Court's decision in *Buckley* permits recovery for the plaintiffs' fear of contracting cancer when they have exhibited symptoms of an asbestos-related disease but not of cancer specifically. Second, we are asked to decide whether the plaintiffs must produce some objective evidence of their emotional injuries to recover for their fear of contracting cancer. Because the *sole* ground of CSX's motion was the plaintiffs' failure to show objective manifestations of their emotional distress, and because the district court granted partial summary judgment *on this basis alone*, we will not address the first question and limit our discussion to answering the second question.[4] After reviewing the relevant decisions of the Supreme Court, as well as the common law and the decisions of other federal courts, we conclude that the plaintiffs were required to make a showing of objective manifestations of their emotional distress to recover for that distress under the FELA. Because they failed to do so, the district court properly granted partial summary judgment to CSX.

---

[4]The plaintiffs did not submit any medical evidence concerning symptoms of cancer or the likelihood that they might contract that disease, and in light of the argument advanced by CSX in support of its motion for partial summary judgment, they were not obligated to do so.

### 1. *Gottshall* and *Buckley*

In recognizing that emotional injuries are compensable under the FELA, the Supreme Court has not decided whether objective manifestations of those injuries are required. Nonetheless, we think that the Court's decisions in *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 114 S. Ct. 2396 (1994) and *Metro-North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 117 S. Ct. 2113 (1997) are instructive.

In *Gottshall*, two railroad workers sued their employer under the FELA for negligent infliction of emotional distress. The first plaintiff, Gottshall, based his claim on witnessing the death of a co-worker, and being made to work within sight of his body, while performing strenuous work in extremely hot and humid conditions. *Gottshall*, 512 U.S. at 535-36, 114 S. Ct. at 2400-01. The second plaintiff, Carlisle, based his claim on being made to work long hours under stressful conditions. *Id.* at 539, 114 S. Ct. at 2402. The Third Circuit allowed both claims, applying its own "genuineness" test rather than any of the common law doctrines pertaining to recovery for negligently inflicted emotional distress. Under the Third Circuit's standard, the district courts were to review the circumstances underlying such claims to determine whether they were authentic, serious, and foreseeable. *See id.* at 538-40, 114 S. Ct. at 2401-02.

The Supreme Court reversed the Third Circuit in both instances. The Court first faulted the Third Circuit for refusing to adopt any of the common law standards concerning emotional distress, explaining that "the common-law background of this right of recovery must play a vital role in giving content to the scope of an employer's duty under FELA to avoid inflicting emotional injury." *Id.* at 551, 114 S. Ct. at 2408. The Court also rejected the Third Circuit's "genuineness" test on two grounds: (1) it addressed only the potential for fraudulent and trivial claims, but failed to provide a solution to the "more significant problem" of genuine claims leading to "unpredictable and nearly infinite liability for defendants," *id.* at 551-52, 114 S. Ct. at 2408-09; and (2) it would force judges "to make highly subjective determinations concerning the authenticity of claims for emotional injury", *id.* at 552, 114 S. Ct. at 1409. Finally, the Court found the concept of foreseeability to place no meaningful limitation on liability, and it found no support in the common law for imposing a duty on employers to avoid creating a stressful work environment. *Id.* at 552-54, 114 S. Ct. at 2409.

Having rejected the Third Circuit's approach, and having already concluded that claims for damages for negligent infliction of emotional distress are cognizable under the FELA, *see id.* at 550, 114 S. Ct. at 2407, the Court had to decide the proper standard for evaluating such claims. The Court reviewed the three primary tests at

common law for analyzing claims based on negligently inflicted emotional distress: (1) the "physical impact" test, which limits recovery to those plaintiffs who sustain a contemporaneous physical impact or injury due to the defendant's negligent conduct; (2) the "zone of danger" test, which limits recovery to those plaintiffs who sustain a physical impact as a result of the defendant's negligent conduct *or* who are placed in immediate risk of physical harm by that conduct; and (3) the "relative bystander" test, which limits recovery to those plaintiffs whose injuries could reasonably be foreseen by the defendant, considering such factors as the plaintiff's proximity to the accident, the manner in which the plaintiff knows about the accident, and the plaintiff's relation to the victim of the accident. *See id.* at 546-49, 114 S. Ct. at 2406-07. The Court then adopted the zone of danger test as the proper standard for evaluating emotional distress claims under the FELA, finding that it best comported with the Court's understanding of the FELA and the concerns motivating FELA jurisprudence.

In adopting the zone of danger test, the *Gottshall* Court did not expressly require proof that the plaintiffs' emotional distress had manifested itself in some objective or verifiable way. Nonetheless, the Court acknowledged that many jurisdictions following the zone of danger test, as well as many of those following the relative bystander test, "also require that a plaintiff demonstrate a 'physical

11

manifestation' of an alleged emotional injury, that is, a physical injury or effect that is the direct result of the emotional injury, in order to recover." *Id.* at 549 n.11, 114 S. Ct. at 2407 n.11. It is also important to note that both of the plaintiffs in *Gottshall* demonstrated objective manifestations of their distress. Gottshall, for example, experienced nausea, insomnia, cold sweats, repetitive nightmares, weight loss, and suicidal preoccupation. Moreover, he had been formally diagnosed as suffering from major depression and post-traumatic stress disorder. *See id.* at 536-37, 114 S. Ct. at 2401. Similarly, Carlisle experienced insomnia, headaches, depression, and weight loss, and he suffered a nervous breakdown that his medical experts attributed in part to his job-related stress. *See id.* at 539, 114 S. Ct. at 2402. Thus, while the Court did not decide the issue, it did not foreclose the possibility that objective manifestations of emotional injury are required for recovery under the FELA.[5]

The same is true with regard to the Court's opinion in *Buckley*, where the plaintiff claimed recovery under the FELA for his fear of contracting asbestos-related cancer. Applying *Gottshall*, the Court held that the plaintiff's simple contact with

---

[5]At least one commentator believes that the Court in *Gottshall* "did indeed intend a physical manifestation requirement," and for this reason believes that the rule in *Gottshall* should be reconsidered. *See* William T. Krizner, *Is There a Better Standard Than the Zone of Danger Test for Negligent Emotional Distress Claims Under the Federal Employers' Liability Act?*, 34 Tort & Ins. L. J. 907, 917 (1999). Even while criticizing the physical manifestation requirement, however, this commentator would require "credible evidence" of the emotional injury, such as testimony from family members, personal physicians, and psychological experts. *See id.* at 918.

asbestos, which had not produced a disease, did not constitute a "physical impact" within the meaning of the zone of danger test. *Buckley*, 521 U.S. at 432, 117 S. Ct. at 2118. In reaching this conclusion, the Court seemed particularly concerned with one of the policy reasons underlying the common law's limits on recovery for emotional harm — separating "meritorious" claims from those that are "invalid or trivial." *Id.* at 433, 117 S. Ct. at 2119. Acknowledging the difficulty in making this distinction, the Court observed that the district court and the court of appeals had disagreed about whether the plaintiff had presented sufficient objective evidence of his emotional distress. The district court had concluded that the evidence was insufficient because it amounted to little more than the plaintiff's own testimony. *See Buckley*, 521 U.S. at 433, 117 S. Ct. at 2119. The court of appeals, on the other hand, concluded that the plaintiff's complaints to supervisors and investigative entities constituted objective corroborating evidence of his emotional injury. *See id.* Without resolving the conflict, the Supreme Court remarked that, "given the difficulty of separating valid from invalid emotional injury claims, the evidence before us may typify the kind of evidence to which parties and the courts would have to look." *Id.* at 434, 117 S. Ct. at 2119.[6] As in *Gottshall*, without the deciding the issue, the

---

[6]In concurrence, Justice Ginsburg, joined by Justice Stevens, went one step further, concluding that the plaintiff's failure to present any "objective evidence of severe emotional distress" precluded his recovery for emotional injury. *Id.* at 445, 117 S. Ct. at 2124-25

13

*Buckley* Court did not foreclose the possibility that objective manifestations of emotional injury might be required to recover for such injury under the FELA.

## 2. The Common Law

Given the importance placed on the common law in both *Gottshall* and *Buckley*, we look to the common law for guidance on the issue before us. *See Gottshall*, 512 U.S. at 544, 114 S. Ct. at 2404 ("Because FELA is silent on the issue of negligent infliction of emotional distress, common-law principles must play a significant role in our decision."); *see also id.* at 551, 114 S. Ct. at 2408 (stating that "the 'merit' of a FELA claim of this type cannot be ascertained without reference to the common law"). Unfortunately, the common law's approach to recovery for negligently inflicted emotional distress is anything but clear. As one court has explained, "[a]ny attempt at a consistent exegesis of the authorities is likely to break down in embarrassed perplexity." *Hunsley v. Giard*, 553 P.2d 1096, 1098 (Wash. 1976) (citing W. E. Shipley, Annotation, *Right to Recover for Emotional Disturbance or Its Physical Consequences, in the Absence of Impact or Other Actionable Wrong*, 64 A.L.R.2d 100, 103 (1959)). Because the common law's development in this area has been defined largely by policy concerns aimed at avoiding invalid claims and unpredictable liability, while at the same time compensating real emotional injuries

(Ginsburg, J., concurring in part and dissenting in part).

caused by the wrongful conduct of another, a variety of rules have been formulated in various jurisdictions to deal with claims based on emotional distress. This variety renders impossible any effort to define a single common law standard for evaluating emotional distress claims.

Nonetheless, we think that an objective manifestation requirement is well-grounded in the common law. The American Law Institute, for example, indicates that a negligent defendant is liable to a plaintiff who suffers physical harm resulting from the internal operation of fright or other emotional disturbance. *See Restatement (Second) of Torts* § 436 (1965); *see also id.* cmt. a, illus. 1 & cmt. b, illus. 2. Where the defendant's negligence results in emotional disturbance alone, however, "without bodily harm or other compensable damage," the *Restatement* indicates that the defendant is not liable. *See id.* § 436A. These statements, along with the accompanying commentary and illustrations, indicate that recovery for emotional distress requires a showing that the distress has manifested itself through physical symptoms. A leading commentator in the field similarly indicates that "the great majority of courts" allow recovery where "the mental distress [is] certified by some physical injury, illness or other objective physical manifestation." W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 54, at 364 (5th ed. 1984). *See also* Douglas Bryan Marlowe, Comment, *Negligent Infliction of Mental Distress: A*

*Jurisdictional Survey of Existing Limitation Devices and Proposal Based on an Analysis of Objective Versus Subjective Indices of Distress*, 33 Vill. L. Rev. 781, 796-98 & n.91, 808 & n.146 (1988) (identifying seventeen jurisdictions following zone of danger approach, and six jurisdictions following relative bystander approach, that also require physical manifestations of emotional distress).

We find further support for an objective manifestation requirement in the case law of several states. In doing so, we note that the recovery of damages for negligently inflicted emotional distress sometimes is sought in what may be described as an independent tort action, while at other times, such recovery is characterized simply as an element of damages in an ordinary negligence action. *Compare*, *e.g.*, *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.*, 556 N.W.2d 557, 560 (Minn. 1996) (referring to emotional distress as "element of damages") *with Engler v. Wehmans*, 633 N.W.2d 868, 872 (Minn. Ct. App. 2001) (referring to "tort of negligent infliction of emotional distress"). With regard to the requirement that a plaintiff demonstrate objective manifestations of his emotional distress, however, the distinction seems unimportant. *See*, *e.g.*, *Thorpe v. N.H. Dep't of Corrections*, 575 A.2d 351, 353 (N.H. 1990) (rejecting distinction between cause of action for bystander distress and emotional distress as element of damages in negligence action, and requiring physical manifestations in each); *see also Bagwell v. Peninsula*

*Regional Med. Ctr.*, 665 A.2d 297, 320 (Md. Ct. App. 1995) (explaining that emotional distress is compensable only as element of damages for negligence and only where plaintiff can show physical manifestations that are "capable of objective determination"); *Evans v. Twin Falls County*, 796 P.2d 87, 95 (Idaho 1990) (referring to "tort" of negligent infliction of emotional distress and requiring physical manifestation of injury caused by distress).

A large number of jurisdictions appear to require some type of physical manifestation or physical consequence of the alleged emotional harm before recovery is allowed. *See, e.g.*, *Keck v. Jackson*, 593 P.2d 668, 669-70 (Ariz. 1979); *Towns v. Anderson*, 579 P.2d 1163, 1165 (Colo. 1978); *Robb v. Pa. R.R. Co.*, 210 A.2d 709, 714-15 (Del. 1965); *Brown v. Cadillac Motor Car Div., Gen. Motors Corp.*, 468 So.2d 903, 904 (Fla. 1985); *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, N.A.*, 804 P.2d 900, 906 (Idaho 1991); *Barnhill v. Davis*, 300 N.W.2d 104, 107-08 (Iowa 1981); *Anderson v. Scheffler*, 752 P.2d 667, 669 (Kan. 1988); *Vance v. Vance*, 408 A.2d 728, 733-34 (Md. 1979); *Sullivan v. Boston Gas Co.*, 605 N.E.2d 805, 809-10 (Mass. 1993); *Daley v. LaCroix*, 179 N.W.2d 390, 395 (Mich. 1970); *K.A.C. v. Benson*, 527 N.W.2d 553, 557 (Minn. 1995); *Sears, Roebuck & Co. v. Young*, 384 So.2d 69, 71 (Miss. 1980); *Thorpe v. N.H. Dep't of Corrections*, 575 A.2d 351, 353 (N.H. 1990); *Muchow v. Linblad*, 435 N.W.2d 918, 921-22 (N.D.

1989); *McMeakin v. Roofing & Sheet Metal Supply Co.*, 807 P.2d 288, 290 (Okla. Ct. App. 1990); *Houston v. Texaco, Inc.*, 538 A.2d 502, 504 (Pa. Super. Ct. 1988); *Swerdlick v. Koch*, 721 A.2d 849, 864 (R.I. 1998); *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 982-83 (Utah 1993). Additionally, some jurisdictions, while not specifically requiring that the distress manifest itself physically, nonetheless require some form of objective evidence for the plaintiff to recover. *See, e.g., Jones v. Howard Univ., Inc.*, 589 A.2d 419, 424 (D.C. 1991) (requiring that mental distress be "serious and verifiable"); *Leong v. Takasaki*, 520 P.2d 758, 767 (Haw. 1974) (stating that plaintiff must "prove medically the damages occasioned by his mental responses to defendant's negligent act"); *Hegel v. McMahon*, 960 P.2d 424, 431 (Wash. 1998) (requiring plaintiff's emotional distress to "be susceptible to medical diagnosis and proved through medical evidence"). Moreover, these objective manifestation requirements have been applied in cases, like this one, where the plaintiff seeks to recover for his fear of contracting cancer. *See, e.g., Dodge v. Cotter Corp.*, 203 F.3d 1190, 1201-02 (10th Cir. 2000) (applying Colorado law); *Sites v. Sundstrand Heat Transfer, Inc.*, 660 F. Supp. 1516, 1526-27 (W.D. Mich. 1987) (applying Michigan law); *Hansen*, 858 P.2d at 973-75 & 982-83; *see also* Fournier J. Gale III & James L. Goyer III, *Recovery for Cancerphobia and Increased Risk of Cancer*, 15 Cumb. L. Rev. 723, 735 (1984-85) (stating that "obstacles to recovery for

cancerphobia . . . are primarily the same restrictions placed on recovery for [other] emotional harm").

We acknowledge that the objective manifestation requirement has been subject to criticism and that it has been rejected by some courts. *See, e.g.*, *Culbert v. Sampson's Supermarkets, Inc.*, 444 A.2d 433, 437 (Me. 1982); *Camp v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996); *Bowen v. Lumbermens Mut. Cas. Co.*, 517 N.W.2d 432, 443 (Wis. 1994). Nevertheless, the large number of jurisdictions that require some type of objective or verifiable evidence of a plaintiff's emotional injury convinces us that the requirement continues to be an appropriate limitation on the recovery for such injury.

Moreover, our decision is informed by the general policy concerns underlying the common law restrictions on recovery for the negligent infliction of emotional distress: "the potential for a flood of trivial suits, the possibility of fraudulent claims that are difficult for judges and juries to detect, and the specter of unlimited and unpredictable liability." *Gottshall*, 512 U.S. at 557, 114 S. Ct. at 2411. Requiring objective evidence of a plaintiff's emotional distress helps to alleviate these concerns and accords with the common law's cautious approach to recovery for emotional and mental injuries. *See* Keeton*, supra*, § 54, at 360-61 (explaining that concerns underlying common law's doctrinal limitations can be met by "allow[ing] recovery

19

only upon satisfactory evidence and deny[ing] it when there is nothing to corroborate the claim"). By categorically limiting recovery to those plaintiffs able to show objective manifestations of their emotional harm, the requirement avoids "unpredictable and nearly infinite liability," with which the *Gottshall* Court was so concerned, *see* 512 U.S. at 552, 114 S. Ct. at 2408, and it helps to ensure that recovery is allowed for genuine claims, a major concern of the Court in *Buckley*, *see* 521 U.S. at 433-36, 117 S. Ct. at 2119-20. *See also id.* at 436, 117 S. Ct. at 2120 (explaining that common law does not examine genuineness of claim case by case, but rather does so categorically based on "abstract general policy concerns"). Finally, an objective manifestation requirement avoids the problem of judges being forced to make "highly subjective determinations" about the validity of emotional distress claims. *See Gottshall*, 512 U.S. at 552, 114 S. Ct. 2409.

### 3. Federal Court Decisions

Our decision is also informed by decisions of other federal courts that have been faced with this issue in the context of the FELA or analogous federal law. Although we have found no decision from our sister circuits deciding whether the FELA requires an objective manifestation for the recovery of negligently inflicted emotional distress, the Fifth Circuit has imposed such a requirement on claims for intentionally inflicted emotional distress under the Jones Act. *See Martinez v. Bally's*

20

*Louisiana, Inc.*, 244 F.3d 474, 477-78 (5th Cir. 2001).[7]  Similarly, the weight of authority among the district courts in FELA, Jones Act, and general maritime cases seems to favor a requirement that a plaintiff make some showing of objective manifestations of his emotional disturbance.  *See, e.g.*, *Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403, 406-07 (S.D. Fla. 1995) (applying *Gottshall*'s zone of danger test under general maritime law and requiring objective physical manifestations); *Nelsen v. Research Corp. of Univ. of Haw.*, 805 F. Supp. 837, 849 (D. Haw. 1992) (requiring in Jones Act case that distress be "serious" and finding requirement satisfied because plaintiff suffered sleep impairment, weight gain, impotence, bruxism, chronic fatigue, social withdrawal, suicidal ideation, and marital problems);  *Masiello v. Metro-North Commuter R.R.*, 748 F. Supp. 199, 205 (S.D.N.Y. 1990) (finding valid emotional distress claim under FELA where distress resulted in ulcer); *Elliott v. Norfolk & W. Ry. Co.*, 722 F. Supp. 1376, 1377-78 (S.D. W. Va. 1989) (following "weight of authority" in not permitting recovery under FELA "without a physical cause and/or physical manifestation"), *aff'd on other grounds*, 910 F.2d 1224 (4th Cir. 1990); *Teague v. Nat'l R.R. Passenger Corp.*, 708 F. Supp. 1344, 1350 (D. Mass. 1989) (adopting in FELA case requirement that

---

[7]The Jones Act incorporates and makes applicable to seamen the substantive recovery provisions of the FELA.  *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32, 111 S. Ct. 317, 325 (1990).

plaintiff show "objective symptomatology of the mental distress"); *Amendola v. Kan. City S. Ry. Co.*, 699 F. Supp. 1401, 1410 (W.D. Mo. 1988) (requiring in FELA case that plaintiff show "physical harm as a result of the conduct which caused the emotional distress"); *Halko v. N.J. Transit Rail Operations, Inc.*, 677 F. Supp. 135, 139 (S.D.N.Y. 1987) (applying physical manifestation requirement to FELA claim). *But see Hutton v. Norwegian Cruise Line Ltd.*, 144 F. Supp. 2d 1325, 1328 (S.D. Fla. 2001) (rejecting physical manifestation requirement under general maritime law as "inconsistent" with *Gottshall*); *Marriott v. Sedco Forex Int'l Res., Ltd.*, 827 F. Supp. 59, 75 (D. Mass. 1993) (allowing recovery under Jones Act based on plaintiff's direct exposure to HIV-positive vaccine even though plaintiff showed no physical manifestations of distress); *Anselmi v. Penrod Drilling Corp.*, 813 F. Supp. 436, 442 (E.D. La. 1993) (concluding that plaintiff can recover under Jones Act for "purely emotional harm").[8]

---

[8]The plaintiffs cite to the Fifth Circuit's decision in *Hagerty v. L & L Marine Services, Inc.*, 788 F.2d 315 (5th Cir. 1986), in which the court rejected the defendant's argument that the plaintiff could not recover under the Jones Act for his fear of cancer without an accompanying "physical manifestation." Despite its reference to "physical manifestation," however, the court in *Hagerty* actually rejected the common law physical impact or injury requirement — that is, a physical impact or injury *preceding* and *causing* the distress — and not an objective manifestation requirement — that is, a physical or other similar consequence *following* and *caused by* the distress. *See id.* at 318-19. Moreover, the court's discussion of this issue constituted dicta, since the court itself acknowledged that the plaintiff had suffered both an impact and an injury and would therefore meet those requirements. *See id.* at 318 n.1; *see also Gaston v. Flowers Transp.*, 866 F.2d 816, 819 (5th Cir. 1989) (recognizing *Hagerty*'s discussion of impact and injury as dicta). The precedential value of *Hagerty* is further clouded by a subsequent modification in which the panel stated that it assumed "an actionable injury" under

22

## 4. The Plaintiffs' Claims

For all of the foregoing reasons, we hold that a plaintiff must make some showing of an objective manifestation of his or her emotional injury to recover for negligently inflicted emotional distress under the FELA. Although we doubt that the requisite showing need be great, we are not required in this case to decide the specific nature or degree of the manifestation required because the plaintiffs made no showing at all of any objective manifestation or consequence of their emotional injuries. In response to CSX's motion for partial summary judgment, the plaintiffs proffered only their own deposition testimony, and that testimony does not reveal any objective manifestations, of any nature or degree, resulting from their fear of contracting cancer.[9] Nor do the plaintiffs suggest otherwise, arguing only that there

_____

the Jones Act and "intended no opinion as to the nature of the injury required to give rise to an actionable claim." *See Hagerty v. L & L Marine Services, Inc.*, 797 F.2d 256 (5th Cir. 1986). As noted by Judge Jolly in his dissent from the denial of rehearing en banc, this modification seems to indicate that a seaman must in fact show "either physical injury or a traumatic event" before recovering for his fear of contracting cancer. *See id.* (Jolly, J., dissenting). Finally, we note that *Hagerty* was not mentioned by the Fifth Circuit in *Martinez*, where as explained above, the court required a physical manifestation to recover for intentionally inflicted emotional distress under the Jones Act. *See Martinez*, 244 F.3d at 477-78. For these reasons, we do not think that *Hagerty* informs our decision on the issue of whether objective manifestations are required to recover for emotional harm under the FELA.

[9] The portion of Jones's desposition proffered at summary judgment reads in its entirety as follows:

> Q      Okay. Since that time, have you had any fears or concerns of any of your symptoms possibly getting worse or any possibility that you might contract any other asbestos-related illness other than what you have been diagnosed with?
>
> A      Yes. There is always a concern that you are not improving. I mean, you're

23

digressing. I haven't — I haven't contacted anybody in particular. I'm waiting to go back for my annual tests.

Q    Okay. Since May the 6th of 1991, have you ever thought about — specifically about the possibility that as a result of past exposure to asbestos you might contract any other potentially asbestos-related disease or condition, other than what you have been diagnosed with already in the future and thinking about that, has that ever made you feel physically ill to the point where you have actually thrown up?

A    No, not to that point. You're concerned about your health, of course, but I — I haven't been that emotional about it.

Q    Thinking about that possibility, has that ever caused you since your deposition was taken last time, May of '91, caused you to miss an entire night of sleep, go more than 24 hours without any sleep?

A    I don't sleep well, but it — it hasn't caused me . . . .

(Appeal No. 01-14786, R.3-49 at Ex. B, p. 29.)

The portion of O'Steen's deposition proffered at summary judgment reads in relevant part as follows:

. . . .

Q    Did she tell you whether you had anything wrong with your lungs or not?

A    She said I had asbestos.

Q    That's what she said?

A    Uh-huh.

Q    Did she say anything to you about what might happen in the future because you had asbestosis?

A    No. You mean turning into cancer somewhere?

Q    Yeah.

A    No.

Q    Have you heard anything about asbestos and cancer?

A    It could be cancerous, yes, but mine is not the last time he went in my lungs. It could turn into it. It's not ruled out but it's not right now.

Q    Does it concern you?

A    About it turning into cancer?

Q    Yeah.

A    Sure, yeah, it concerns me. Getting shorter and shorter of breath is concerning me.

Q    Does that being concerned about it turning into cancer, has that caused you to lose any sleep?

A    No. I lose sleep, enough sleep by being congested, yeah.

Q    But not the cancer issue?

A    As far as mentally, no. It don't work on me.

. . . .

24

is no objective manifestation requirement under the FELA. For the reasons stated, we disagree with the plaintiffs' position and conclude that the district court correctly granted partial summary judgment to CSX on the plaintiffs' fear of cancer claims.

## IV. Conclusion

Because the plaintiffs failed to produce any evidence of an objective manifestation of their emotional distress from the fear of contracting cancer, we affirm the district court's grant of partial summary judgment to CSX. Because we find no abuse of discretion in the district court's denial of the plaintiffs' motions for new trial, we affirm the denial of those motions.

AFFIRMED.

(Appeal No. 01-14787, R.2-51 at Ex. E, pp. 79-80.)