Evans v. Taco Bell                     CV-04-103-JD  09/23/05

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Wendy Evans et al.

    v.                                    Civil No. 04-cv-103-JD
                                          Opinion No. 2005 DNH 132
Taco Bell Corp.


O R D E R


Taco Bell Corp. has moved for summary judgment on the plaintiff's claims for injuries she allegedly suffered upon learning that an employee of a Taco Bell restaurant she and her family patronized had been diagnosed with Hepatitis A.  The plaintiff, Wendy Evans ("Evans"), who brought the suit as a putative class action, objects to summary judgment in its entirety.  Taco Bell has filed a reply to Evans's objection.

Taco Bell has also moved to strike one of the declarations submitted in support of Evans's objection to summary judgment. Finally, Taco Bell has moved for sanctions against Evans and her counsel on the ground that her previous objection to the summary judgment motion, which sought relief on the basis of Fed. R. Civ. P. 56(f) and which the court denied in an order of June 30, 2005, violated Fed. R. Civ. P. 11(b).  Evans has filed an objection to both the motion to strike and the motion for sanctions.  Taco Bell has made reply to the objection to the motion to strike.

## Background

Taco Bell argues in its reply that Evans's memorandum supporting her objection to the summary judgment motion fails to comply with Local Rule 7.2(b)(2), which provides:

> A memorandum in opposition to a motion for summary judgment shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the adverse party contends a genuine dispute exists so as to require a trial. All properly supported material facts set forth in the moving party's factual statement shall be deemed admitted unless properly opposed by the adverse party.

Rather than incorporating the "short and concise statement" required by this rule, Evans's memorandum consists entirely of argument as to the existence of what she views as genuine issues of material fact precluding summary judgment on each of her theories of recovery.

Although Evans supports each section of her argument with record citations, this court has previously ruled that summary judgment briefs that "go directly to arguing their positions, referring to certain facts as they pertain to each section of argument, rather than following the more customary (and helpful) format of prefacing argument with a statement of all the underlying facts of the case" fail to comply with Local Rule

2

7.2(b)(2)'s mandate for a "short and concise statement of material facts." Ulmann v. Anderson, 2004 DNH 73, 2004 WL 883221, at *1 n.2 (D.N.H. Apr. 26, 2004); see also Young v. Plymouth State Coll., 1999 WL 813887, at *1 n.2 (D.N.H. Sept. 21, 1999) (noting that factual statement which includes "argument and legal characterizations" does not comply with rule). Because Evans's memorandum objecting to the summary judgment motion does not comply with L.R. 7(b)(2), all of the properly supported material facts set forth in Taco Bell's memorandum in support of the motion are deemed admitted for purposes of this order.[1]

Evans, her husband, and their three minor daughters consumed food that she had purchased from the Taco Bell restaurant in Derry, New Hampshire, for dinner on February 7, 2004. Within hours, the entire Evans family fell ill, suffering variously from nausea, stomach pains, diarrhea, fever, dehydration, and headaches. These symptoms began to subside after four or five days but persisted in less severe form for about two weeks.

Aside from a call to a doctor, who opined that the family had probably been stricken by "one of those flu bugs that goes

---

[1]On multiple occasions over the course of this litigation, the court has rebuked Evans's counsel for their disregard of the Local Rules. See 2005 DNH 104, 2005 WL 1592984, at *4 n.7 (D.N.H. June 30, 2004) (order on Evans's motion for Rule 56(f) relief); 2004 WL 103995 (D.N.H. Apr. 21, 2004), at *2 n.1 (order on Evans's first motion for remand).

3

around," Evans Dep. at 17, the Evanses did not seek any medical care for these symptoms. Just over a week after consuming the Taco Bell food, however, two of Evans's daughters began experiencing a "scaly and bumpy rash" on their upper bodies. Id. at 26. Evans took her daughters to a doctor, who prescribed a cream and oral antibiotics during an initial visit and a different cream in a later visit. The rash lasted for about a week. Recovered from their maladies, the Evans family consumed food purchased from the Derry Taco Bell again on February 21, 2004. After this meal, the Evanses felt "a bit sick" and underwent "the regular diarrhea type of stuff" but did not experience any other symptoms. Id. at 42. No physician has ever told Evans that the rash or any of the other symptoms she or any of her family members experienced during this time were related to eating food from Taco Bell.

On February 25, 2004, an employee of the Taco Bell restaurant in Derry, New Hampshire, was diagnosed with Hepatitis A. That same day, Taco Bell notified the New Hampshire Department of Health and Human Services, which immediately began an investigation. Following the investigation, Dr. Jesse F. Greenblatt, the chief of the Department's Bureau of Disease Control, recommended to the State Commissioner of Health and Human Services that he "issue a Health Advisory through the

4

Health Alert Network and issue a public alert through the media."
Greenblatt Aff. ¶ 7. Greenblatt explains that these actions were intended to "inform clinicians of a case of Hepatitis A in a food handler; advise of a public Hepatitis A . . . immunoglobulin clinic and to recommend additional vigilance regarding Hepatitis A screening." Id. ¶ 8. The Department issued a notice to this effect on February 27, 2004, urging those who had patronized the Derry Taco Bell during a certain time period in February 2004, to receive immunoglobulin injections.[2] At Taco Bell's expense, the Department set up a public clinic for this purpose at each of three different locations in southern New Hampshire.

Evans, her husband, and their three daughters all received immunoglobulin injections at one of the public clinics on or about February 29, 2004. None of the Evanses was feeling ill at that time. The inoculation Evans received "hurt because [it] had to go into a deep tissue muscle" in her arm, which continued to hurt for a few days. Evans Dep. at 46. She also recalls observing two of her daughters cry as a result of their inoculations and that each of her children continued to feel pain

---

[2]Neither party points to any evidence in the summary judgment record which fixes the starting and ending dates of this period. For purposes of this motion, the court will assume that the period ran from February 7, 2004, through February 21, 2004, as alleged in the complaint.

in her arm for more than a week afterward.  She does not recall, however, any other symptoms that she or her family experienced as a result of the injections.

The Evans family also underwent testing for Hepatitis A, although it is unclear whether this occurred before or after their inoculations.[3]  Evans explains that her family "got tested because we were all scared and wanted to know" and because her youngest daughter needed the testing to enroll in a new kindergarten program.  Id. at 42.  The testing, which involved having blood drawn at the office of the Evans's family physician, cost almost $400 per person and was not covered by insurance.  About a week after having the tests, the family received the results, indicating that none of them had Hepatitis A.

In fact, during the 180-day period following the diagnosis of Hepatitis A in the Derry Taco Bell employee, no cases of the disease arising from exposure to food from the restaurant were reported to the state Department of Health and Human Services.  New Hampshire law at the time required any diagnosis of Hepatitis A to be reported to the department within twenty-four hours.  N.H. Code Admin. R. Ann. He-P 301.02(a)(1)(I) (2004).  Given the

_____

[3]The only evidence submitted on this point consists of excerpts from Evans's deposition in which she said she could not remember when the testing occurred.

passage of time since the employee's diagnosis, there will be no future occurrences of the disease arising from exposure to food from the Derry Taco Bell.  There is also no evidence that the infected employee contracted the disease at the restaurant.

Evans filed a declaration and petition for class action[4] in Rockingham County Superior Court against Taco Bell on March 11, 2004.[5]  At that point, Evans claimed to be "in fear and experiencing emotional trauma associated with the potential of contracting the disease" and from observing her children worry about contracting the disease.  Compl. ¶¶ 23-24.  In addition to the symptoms she experienced after eating food from the Derry Taco Bell on February 7, 2004, the complaint alleges that Evans had been suffering from persistent nausea, headaches, and a darkening of her urine "[s]ince learning of her family's possible exposure to Hepatitis A and receiving the inoculation . . . ." Id. ¶ 17.  Evans therefore claims "damages for physical pain, physical symptoms, fear and emotional distress."  Id. ¶ 24.  Her complaint asserts seven separate counts against Taco Bell: (I) negligence, (II) strict liability, (III), breach of fiduciary

_____

[4]To avoid confusion, the court will use the term "complaint" to refer to this document.

[5]The complaint also named a number of other defendants whom Evans has since voluntarily dismissed from the case without prejudice.

duty, (IV) breach of warranty, (V) violation of the New Hampshire Consumer Protection Act, Revised Statutes Annotated ("RSA") 358-A:2, (VI) vicarious liability, and (VII) enhanced compensatory damages.

## I.    Taco Bell's Motion to Strike

Taco Bell has moved to strike the declaration of Sue A. Taylor, M.D., submitted by Evans in connection with her objection to the motion for summary judgment. Taylor is a physician in Dover, New Hampshire, specializing in endocrinological disorders, who has counted among her patients one Joan Karakostas. Karakostas and her friend, Sherrie Daneau, ate at the Derry Taco Bell once between February 7, 2004, and February 9, 2004, and again on February 14, 2004. Both claim to have begun suffering "a variety of symptoms" in the weeks that followed, including severe stomach pain, diarrhea, vomiting, aches and pains, and a darkening of their urine. Each submits a report of blood testing conducted in mid-September, 2004, showing a positive result for the presence of the Hepatitis A antibody.

Based on this testing, together with two other blood tests Karakostas had previously undergone and the symptoms she claims to have experienced starting in late February and early March, 2004, Taylor opines that, during that period, "Karakostas could

8

have been suffering from an acute case of Hepatitis A." Taylor Aff. ¶ 13. Pursuant to Fed. R. Civ. P. 37(c)(1), Taco Bell moves to strike this opinion, and Taylor's affidavit in its entirety as undisclosed expert testimony. Evans protests that such a sanction is inappropriate because, inter alia, the court has yet to set any deadline for the disclosure of experts.

The court need not resolve this issue, however, because Taylor's opinion, and indeed the entire issue of whether Karakostas had Hepatitis A, is irrelevant. Karakostas is not a party to this action--only Evans is. To be sure, Evans has filed the case as a putative class action, seeking to represent everyone exposed to Hepatitis A as a result of patronizing the Derry Taco Bell in February, 2004. But unless and until the court certifies such a class, the potential claims of putative class members other than the named plaintiff are simply not before the court.[6] See generally 1 Alba Conte & Herbert B.

---

[6]It is well-settled that, absent prejudice to the plaintiff, a court may decide a defendant's motion for summary judgment in a putative class action before taking up the issue of class certification. See, e.g., Curtin v. United Airlines, Inc., 275 F.3d 88, 92-93 (D.C. Cir. 2001); Cowen v. Bank United of Tex., FSB, 70 F.3d 937, 941-42 (7th Cir. 1995); Wright v. Shock, 742 F.2d 541, 543-44 (9th Cir. 1984); Santana v. Deluxe Corp., 12 F. Supp. 2d 162, 179 (D. Mass. 1998); Ramirez v. DeCoster, 194 F.R.D. 348, 355 (D. Me. 2000). Here, no prejudice to either Evans or the putative class members is apparent, and Evans has not objected to having the summary judgment motion decided before

Newberg, Newberg on Class Actions § 1.3, at 19-20 (4th ed. 2002).

Whether someone other than Evans or the members of her family contracted Hepatitis A from eating at the Derry Taco Bell, then, has no bearing on Taco Bell's motion for summary judgment, which addresses the only claims that comprise the action at this point--hers.  See Massey v. Zema Sys. Corp., 1998 WL 708913, at *6 n.6 (N.D. Ill. Sept. 30, 1998) (deciding pre-certification summary judgment motion by examining claims as they related only to named plaintiffs rather than to other putative class members); accord Rutan v. Republican Party of Ill., 868 F.2d 943, 947 (7th Cir. 1989) ("Because no class of plaintiffs . . . [was] certified, only the named plaintiffs . . . are before this court. Therefore, we treat plaintiffs' claims as being brought solely by the named plaintiffs" in reviewing motion to dismiss for failure to state claim) (citation omitted), rev'd in part on other grounds, 497 U.S. 62 (1990).  The proffered evidence tending to show that Karakostas (or Daneau) had Hepatitis A simply cannot create a genuine issue of material fact.  Accordingly, Taco Bell's motion to strike Taylor's affidavit is denied as moot, since the court has found it to be irrelevant.

---

the motion for class certification.

II. Taco Bell's Motion for Summary Judgment

A. Standard of Review

On a motion for summary judgment, the moving party has the burden of showing the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant does so, the court must then determine whether the non-moving party has demonstrated a triable issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). In ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. E.g., J.G.M.C.J. Corp. v. Sears, Roebuck & Co., 391 F.3d 364, 368 (1st Cir. 2004); Poulis-Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004).

B. Discussion

Taco Bell seeks summary judgment on Evans's claims on a number of theories. First, Taco Bell argues that Evans cannot show that it breached any duty to her in the ways alleged in the complaint and therefore cannot recover in negligence. Taco Bell also argues that, even if Evans did have some evidence of such a breach, she has no proof that she suffered any compensable injury as a result. Taco Bell contends that Evans's strict liability, breach of warranty, and Consumer Protection Act claims cannot

11

succeed for lack of evidence that the food she purchased from the Derry Taco Bell was defective.  Finally, Taco Bell argues that it does not owe any fiduciary duty to Evans as a matter of law.

### 1.  The Negligence Claim

Evans's objection to Taco Bell's summary judgment motion sets forth a detailed recitation of evidence that she believes demonstrates breaches of duty by Taco Bell.  Specifically, Evans argues that, at the Derry restaurant, Taco Bell permitted employees to handle food with bare hands, rather than requiring them to wear gloves for that purpose; failed to implement or enforce appropriate hand-washing procedures; and inadequately trained the employee who contracted Hepatitis A about the perils of the disease.  Mem. Opp'n Mot. Summ. J. §§ II.B, D.[7]

The court will assume for purposes of this order that genuine issues of material fact exist as to whether Taco Bell breached its duties in the ways Evans asserts.  To survive summary judgment on her negligence claim, however, Evans must also show a genuine issue of material fact as to whether any of those alleged breaches proximately caused the injuries she

---

[7]Evans's brief in opposition to the summary judgment motion does not contain any Section II.C.

12

complains of. See, e.g., Brookline Sch. Dist. v. Bird, Inc., 142 N.H. 352, 356 (1997); Doucette v. Town of Bristol, 138 N.H. 205, 210 (1993). A defendant's negligent conduct is the proximate cause of the plaintiff's injury when the injury would not have occurred but for the conduct, i.e., was its cause-in-fact, and the conduct was a substantial factor in bringing about the injury, i.e., was its legal cause. Carnigan v. N.H. Int'l Speedway, Inc., 151 N.H. 409, 414 (2004); Estate of Joshua T. v. New Hampshire, 150 N.H. 405, 407-408 (2003).

Despite its considerable length, Evans's objection to the summary judgment motion largely ignores Taco Bell's arguments that she has no proof linking its alleged negligence to her claimed injuries. Indeed, the objection does not advance any argument whatsoever as to how Taco Bell's allegedly derelict handwashing practices or training of the Hepatitis A-stricken employee contributed to Evans's claimed injuries. Mem. Opp'n Mot. Summ. J. §§ II.B.3. Evans does contend that Taco Bell's failure to require employees at its Derry location to wear gloves when handling food "increased the risk of transmission of the Hepatitis A virus . . . to patrons [there] during February 2004 thereby necessitating the inoculation and intervention on behalf of those patrons . . . ." Mem. Opp'n Mot. Summ. J. at 18-19. Because she and her family received inoculations at one of the

13

clinics provided for that purpose, she suggests that Taco Bell's breach caused injury to her in the form of the accompanying pain.

As support for this theory, Evans relies solely on a February 27, 2004, e-mail message which appears to have been distributed to members of the Department's "outbreak team." This e-mail reported that employees of the Derry Taco Bell were not wearing gloves while preparing food or serving it to patrons and that the infected worker had been performing these tasks while suffering from symptoms of Hepatitis A.[8] The e-mail also noted that "hygiene techniques included the use of a hand sanitizer," but that the federal Center for Disease Control (the "CDC") had indicated that a sanitizer should not be used in place of gloves. Hutchins Aff. ¶ 2, Ex. 8 at 8. The e-mail goes on to state that one "Dr. Talbot consulted with the CDC for this situation and determined that it was recommended that the intervention consist of immune globulin (IG) clinics to be implement [*sic*] for potentially exposed patrons." Id. at 6.

Evans suggests that this e-mail creates a genuine issue of material fact as to whether the Department decided to recommend inoculations for those who had patronized the Derry Taco Bell

---

[8]A report submitted by a Department official following his visit to the Derry Taco Bell that morning expressed his conclusion that "barehand contact was permitted" there. Hutchins Aff. ¶ 2, Ex. 8, at 10-11.

14

during the relevant period based on the conclusion that the restaurant did not make its employees wear gloves while handling food.  The court disagrees.  Evans presents no developed argument as to how the e-mail, either directly or inferentially, shows that Taco Bell's alleged failure to require gloves at its Derry store affected the Department's decision.[9]  She also has not come forth with any other proof explaining the Department's actions.[10]

Standing alone, the e-mail simply reflects the fact that the Department was aware, at the time it decided to recommend inoculations, that the Derry employees apparently had not been

[9]The e-mail itself also does not appear to constitute admissible evidence within the meaning of Fed. R. Civ. P. 56(e). Both the e-mail and the third-party statements within it appear to be hearsay.  Furthermore, the e-mail has been submitted as an exhibit to the affidavit of Evans's counsel, who does not purport to have any personal knowledge which could serve to authenticate the document or attest to circumstances of its creation which might satisfy the requirements of any hearsay exception.  Because Taco Bell has not moved to strike or otherwise objected to the inclusion of the e-mail in the summary judgment record, the court has nevertheless considered the document in ruling on the motion. See Perez v. Volvo Car Corp., 347 F.3d 303, 314 (1st Cir. 2002).

[10]In fact, the only other record evidence touching on the Department's decision consists of Greenblatt's affidavit, in which he states that he made a recommendation to the Department commissioner following an investigation that involved meetings with the infected worker and her family, other Taco Bell employees, community representatives, and others.  Greenblatt makes no mention of what role, if any, the advice of the CDC or even the discovery that the employees were not required to wear gloves played in recommendation, let alone the commissioner's decision to act on it.

15

wearing gloves.  There is nothing to suggest that, had Taco Bell mandated glove use at its Derry location, the Department would have recommended an intervention short of inoculation for those who had eaten there and thus spared Evans the associated pain. She has therefore failed to adduce any proof tending to show that Taco Bell's allegedly negligent conduct in this regard was the cause-in-fact of her claimed injuries.  Cf. Bronson v. Hitchcock Clinic, 140 N.H. 798, 801 (1996).

Evans has also failed to adduce any proof tending to show that Taco Bell's asserted breach was the legal cause of her complained-of injuries.  This showing, also essential to recovery in negligence, requires that the breach constitute "a substantial factor, rather than a slight one" in producing the injury. N. Bay Council, Inc., Boy Scouts of Am. v. Bruckner, 131 N.H. 538, 548 (1989) (citing Restatement (Second) of Torts § 431 cmt. a (1977)); see also Pillsbury-Flood v. Portsmouth Hosp., 128 N.H. 299, 304 (1986).  Even if it could be inferred, from the e-mail's reference to the apparent non-use of gloves among employees at the Derry Taco Bell, that this practice played a role in the Department's decision--an inference which, for the reasons just discussed, is not reasonable--there is no evidence to suggest that its role in the decision was substantial.  The e-mail therefore fails to create a genuine issue of material fact as to

16

whether Taco Bell's alleged negligence in permitting its Derry employees to handle food with bare hands was the legal cause of Evans's claimed injuries.  See Island Shores Estates Condo. Ass'n v. City of Concord, 136 N.H. 300, 305 (1992) (affirming dismissal of negligence claim where threat of injury to plaintiff would have existed regardless of defendant's alleged breach).

Evans's only other theory attempting to link Taco Bell's alleged negligence with any harm to her proceeds from the fact that she and her family began suffering from gastrointestinal and related symptoms soon after eating dinner purchased from the Derry Taco Bell on February 7, 2004.  She argues that the short period of time between the consumption of the food and the onset of the symptoms, together with the nature of the symptoms, creates a genuine issue of material fact as to whether the food caused the symptoms.[11]  Generally, however, "mere correlation between ingestion and illness is insufficient as a matter of law to establish causation."  Wilson v. Circus Circus Hotels, Inc., 710 P.2d 77, 79 (Nev. 1985); see also, e.g., Minder v. Cielito Lindo Rest., 136 Cal. Rptr. 915, 918 (Cal. Ct. App. 1977); Mann v. D.L. Lee & Sons, Inc., 537 S.E.2d 683, 684 (Ga. Ct. App.

---

[11]Evans does not argue that the rash that appeared on two of her daughters one week after their Taco Bell meal could have been caused by the food as a matter of common experience, and the summary judgment record contains no evidence to that effect.

17

2000); <u>Griffin v. Schwegmann Bros. Giant Supermkts.</u>, 542 So. 2d 710, 712-13 (La. Ct. App. 1989); 4 Louis R. Frumer & Melvin I. Friedman, <u>Products Liability</u> § 48.21[2][a], at 48-123 (1960 & 2002 supp.). As one court has remarked in reversing the denial of summary judgment for the defendant on a similar theory:

> The mere fact that the plaintiff became nauseous about one-half hour after consuming some of the [food obtained from the defendant] is insufficient to withstand the defendant's motion for summary judgment. There are many different causes of nausea, vomiting and stomach distress. The plaintiff's evidence of impurity leaves her proof in the realm of speculation and conjecture.

<u>Valenti v. Great Atl. & Pac. Tea Co.</u>, 615 N.Y.S.2d 84, 85 (N.Y. App. Div. 1994) (internal quotation marks and citations omitted).

Evans has not come forward with any authority or argument suggesting that New Hampshire would depart from this well-accepted rule.[12] <u>Cf.</u> <u>Elliot v. Lachance</u>, 109 N.H. 481, 485-86

---

[12]One of the New Hampshire cases Evans cites in support of her theory merely stands for the proposition that expert testimony is not required to demonstrate the proximate cause of an injury when "the cause and effect are so immediate, direct and natural to common experience as to obviate any need for an expert medical opinion." <u>Reed v. County of Hillsborough</u>, 148 N.H. 590, 592 (2002) (ruling that expert testimony might not be necessary to show that elderly woman's fall on sidewalk caused abrasions). As <u>Valenti</u> and like authorities have persuasively reasoned, digestive problems often result from causes other than what was just eaten, so an association between the two cannot be said to be "immediate, direct, and natural to common experience." In <u>Lamontagne v. Lamontagne</u>, 100 N.H. 237 (1956), the other case Evans cites on this point, "[t]he defendant raised no question

18

(1969) (overturning verdict awarding damages allegedly caused by defective product in absence of evidence that defect caused claimed injuries because "[t]he mere fact that the plaintiff suffered injuries is not sufficient to justify such a conclusion") (internal quotation marks omitted).  She also has not come forward with any evidence linking Taco Bell's products to her symptoms apart from the temporal proximity between when she consumed the food and when she began suffering from gastrointestinal distress.  In fact, the only record evidence suggesting the etiology of her symptoms at all consists of her account of her doctor's statement that the family probably had the flu.  Evans has failed to show a genuine issue of material fact as to whether Taco Bell's asserted negligence proximately caused her claimed symptoms.

Evans's objection to the summary judgment motion does not advance any other theory connecting her other categories of alleged damages to any misfeasance by Taco Bell.  This shortcoming extends to her claim for fear and emotional distress

---

. . . as to the sufficiency of the evidence to establish causal connection between the accident and the plaintiff's subsequent complaints."  Id. at 238.  Instead, the defendant challenged the jury's award of damages given the severity of the plaintiff's injuries, and the court rejected this challenge based in part on the absence of evidence of any other cause for them, because the plaintiff had previously been in good health.  Id. at 238–39. Lamontagne is therefore inapposite here.

19

over her family's possible exposure to Hepatitis A.  Putting that issue aside for the moment, however, the court notes that the nature of this claim itself presents a serious problem.

The New Hampshire Supreme Court has held, in a case rejecting a remarkably similar claim, that "regardless of physical impact, in order to recover for emotional distress under a traditional negligence theory, the plaintiff must demonstrate physical symptoms of her distress."  Palmer v. Nan King Rest., 147 N.H. 681, 684 (2002).  Despite the physical symptoms enumerated in her complaint, Evans has not responded to the summary judgment motion with evidence that her claimed emotional distress had any physical effects.[13]  Instead, she contends that she "is entitled to recover emotion [sic] distress damages with [sic] establishing proof of physical manifestation," notwithstanding Palmer.  Mem. Opp'n Mot. Summ. J. at 34.

The plaintiff in Palmer bit into a used band-aid while eating food prepared by the defendant, causing her "physical and

_____

[13]Nor does Evans assert a claim for negligent infliction of emotional distress.  To recover under such a theory, a plaintiff must "demonstrate physical symptoms of [her] distress regardless of physical impact."  O'Donnell v. HCA Health Servs. of N.H., Inc., ___ N.H. ___, 2005 WL 2152506, at *2 (N.H. Sept. 8, 2005) (emphasis added).  The ensuing discussion, then, is confined to a claim of negligence which seeks damages for resulting emotional distress, rather than a claim of negligent infliction of emotional distress.

mental revulsion, as well as extreme anxiety that she might have contracted an infectious disease." 147 N.H. at 682 (internal quotation marks omitted). After testing negative for both HIV and hepatitis, the plaintiff brought claims of negligence, strict products liability, and breach of warranty against the defendant. Id. She did not, however, claim to have suffered any physical injury. Id. The trial court granted summary judgment for the defendants on the ground that "there was no evidence that the plaintiff had experienced any physical injury from her anxiety." Id. The supreme court expressly rejected the plaintiff's contention on appeal that "because the 'band-aid' in her mouth constituted physical impact, an emotional distress claim need not be predicated upon physical symptoms of her anxiety." Id. at 698. In so holding, the court noted that it had refused the same argument in Thorpe v. New Hampshire, 133 N.H. 299 (1990), where the plaintiff, like Palmer, had also suffered a physical impact but had not alleged any physical injury. 147 N.H. at 684.

Evans seeks to distinguish Palmer and Thorpe in the first instance on the ground that, in addition to her alleged emotional distress, she does claim damages for the physical injury she suffered in receiving the immunoglobulin injection.[14] As Taco

_____

[14]Evans also seeks to distinguish these cases on the ground that they did not consider the availability of damages for

21

Bell points out in its reply brief, however, Evans does not assert that her claimed emotional distress resulted from her inoculation, but rather from her ingestion of food which she later learned could have potentially been contaminated with Hepatitis A. Because her alleged emotional distress did not follow from any physical injury, Evans's negligence claim suffers from the same fatal defect as those of the plaintiffs in Palmer and Thorpe: it seeks damages for emotional distress unaccompanied by either physical injury or physical symptoms. The fact that she also seeks damages for physical injury which did not itself produce her claimed emotional distress does not entitle her to recover in spite of the rule laid down in those cases.[15]

An examination of the genesis of the rule in New Hampshire makes this point clear. In Chiuchiolo v. New England Wholesale Tailors, 84 N.H. 329 (1930), the court scrutinized the rule in some jurisdictions "disallowing recovery for the consequences of

emotional distress under products liability and breach of warranty theories. For reasons that will appear, the court need not address this argument. See Parts II.B.2-II.B.3, infra.

[15]Furthermore, as previously discussed, Evans has failed to show a genuine issue of material fact connecting her claimed physical injuries to Taco Bell's allegedly wrongful acts. Even if her theory were correct as a legal matter, then, Taco Bell would still be entitled to summary judgment.

22

fright caused by negligence when there is no physical impact."
Id. at 332. Recognizing the rule as a departure from general
principles of tort damages, the court proceeded to consider
whether any sound policy rationale existed to justify such an
exception. Id. at 333-34. The court identified "[t]he only
possibly adequate reason" in this regard as "that in the long run
justice will be better promoted with . . . the exception, because
otherwise this would open a wide door for unjust claims, which
could not successfully be met." Id. at 334 (internal quotation
marks omitted).

After finding this rationale wanting, the court declined to
uphold the rule. Id. at 335. Nevertheless, the court held that

> If the rule is founded on policy, the argument for
> expediency, regarded as unsustained in cases of fright
> resulting in serious consequences, is maintained where
> there are no such consequences. A rule of liability
> would impose undue burdens and go beyond the practical
> needs of recovery for another's negligence. When there
> are no consequences of fright, the fright can be
> regarded only as a momentary and transient disturbance,
> and as either too lacking in seriousness or as giving
> too great an extension of legally wrongful conduct to
> warrant the imposition of liability.

Id. at 338. Many years later, the court explained the outcome in
Chiuchiolo as reflecting the fact that it "was not persuaded that
abolishing the 'impact rule' would cause a proliferation of
fraudulent claims and create liability disproportionate to
culpability." Corso v. Merrill, 119 N.H. 647, 655 (1979).

23

Instead, the Chiuchiolo court recognized that simply limiting recovery to cases of emotional distress with "serious consequences" would serve to mitigate such undesirable effects while remaining "responsive to a fair sense of justice." 84 N.H. at 335; see also Young v. Abalene Pest Control Servs., Inc., 122 N.H. 287, 290 (1982) (Douglas, J., dissenting).

The rule allowing recovery for emotional distress marked by physical symptoms, then, rests on the assumption that the symptoms "guarantee that the claim is not spurious" just as well as physical impact does. William Lloyd Prosser & W. Page Keeton, Prosser & Keeton on the Law of Torts § 54, at 362 (5th ed. 1984); see also Palmer, 147 N.H. at 683 (declining to revisit this assumption). But physical injury can provide no such guarantee when it has not itself caused the emotional distress for which the plaintiff seeks recovery, but simply resulted from the same tortious conduct. As Prosser and Keeton have explained, "[w]ith a cause of action established by the physical harm . . . it is considered sufficient assurance that the mental injury is not feigned." Prosser & Keeton, supra, § 54, at 363; see also id. at 361 (noting that recovery is generally disallowed for "mental disturbance, without accompanying physical injury, illness or other physical consequences . . .") (emphasis added). In the absence of such an assurance, whether in the form of physical

24

injury or physical manifestation, New Hampshire law simply does not permit recovery for emotional distress.[16]

Furthermore, even if New Hampshire did allow damages for emotional distress unaccompanied by physical injury or symptoms, Evans has still failed to link her alleged emotional distress to any negligent act on the part of Taco Bell.  To recover for emotional distress, like any other kind of damages, a plaintiff must show that they were proximately caused by the defendant's negligence.  E.g., Corso, 119 N.H. at 656; Chiuchiolo, 84 N.H. at 333.  Again, Evans charges that Taco Bell deviated from applicable standards of care by failing to require its employees at the Derry store to wear gloves, by failing to implement and enforce appropriate hand-washing policies, and by failing to train the infected employee about the perils of Hepatitis A. There is no evidence, however, that any of these failures contributed to Evans's anxiety over whether she or her family had contracted the disease by eating food from the Derry Taco Bell.

Indeed, there is no evidence that Evans even became aware of the allegedly derelict sanitation practices at the restaurant

_____

[16]As Prosser and Keeton note, some jurisdictions permit recovery for emotional distress based on other kinds of "special circumstances" which also serve to guarantee genuineness. Prosser & Keeton, supra, § 54, at 362; see also Young, 122 N.H. at 290.  Evans does not cite any such circumstances here.

25

during the time she was living in fear of having been exposed to Hepatitis A. Those practices therefore could not have caused or contributed to cause her claimed emotional distress as a logical matter. Instead, as Evans herself suggests in her objection, her fear of having the disease arose "[s]ometime after learning that an employee at the Taco Bell had contracted hepatitis . . . ." Mem. Opp'n Mot. Summ. J. at 38. But Evans does not argue that Taco Bell breached any duty to her merely by having somebody infected with Hepatitis A work at one of its restaurants. She has therefore failed to demonstrate a genuine issue of fact as to whether Taco Bell's asserted negligence caused her alleged emotional distress.[17] See Pichowicz v. Hoyt, 2000 DNH 40, 2000 WL 1480445, at *3-*4 (D.N.H. Feb. 11, 2000) (denying claim for fear of contracting disease allegedly arising from consumption of water contaminated by defendant without proof that fear "substantially caused or contributed to by the contamination").

For the foregoing reasons, Evans has failed to demonstrate a genuine issue of fact as to whether Taco Bell's alleged breaches of duty, assuming that such breaches occurred, proximately caused her claimed damages. Taco Bell is therefore entitled to summary

---

[17]For the same reason, Evans has also failed to demonstrate a genuine issue of material fact linking her family's expenses in getting tested for Hepatitis A to Taco Bell's asserted negligence.

judgment on Evans's negligence claim.

### 2.  The Strict Liability Claim

Evans acknowledges that, to recover on her strict liability theory, she must prove that "the product was in a defective condition (when it left the defendant's hands), the defect made the product unreasonably dangerous, and that the defect was the proximate cause of [her] injuries."  Mem. Opp'n Mot. Summ. J. at 38 (citing Buckingham v. R.J. Reynolds Tobacco Co., 142 N.H. 822, 825-26 (1998), McLaughlin v. Sears, Roebuck & Co., 111 N.H. 265, 267 (1971), and Buttrick v. Lessard, 110 N.H. 36, 39 (1969)).  She proceeds to argue that she has avoided summary judgment on this claim by coming forward with evidence that the food she purchased from the Derry Taco Bell had been touched by the bare hands of an employee infected with Hepatitis A.  According to Evans, this alleged fact rendered the food both defective and unreasonably dangerous as required to hold Taco Bell strictly liable under New Hampshire law.  See id. §§ III.a--III.b.

Evans's objection, however, does not address how this claimed defect caused her any harm.  As discussed at length in the analysis of Evans's negligence claim, Part II.B.1, supra, the record discloses no genuine issue of material fact linking Taco Bell's alleged failure to require the employees at its Derry

27

location to wear gloves with any of her claimed injuries. Thus, assuming, without deciding, that Evans has shown a genuine issue of material fact as to whether the food she purchased from Taco Bell was both defective and unreasonably dangerous, her strict liability claim still cannot proceed given the absence of evidence that the alleged defect caused her any injury. As Evans has acknowledged, causation is an essential element of this claim. Taco Bell is therefore entitled to summary judgment on Evans's strict liability claim. See Willard v. Park Indus., Inc., 69 F. Supp. 2d 268, 272-73 (D.N.H. 1999).

### 3. The Breach of Warranty Claim

Evans also acknowledges that, insofar as she seeks recovery for personal injury under her breach of warranty theory, she must show that such damages "proximately result[ed] from the breach." Mem. Opp'n Mot. Summ. J. at 47 (citing N.H. Rev. Stat. Ann. §§ 382-A:2-714--715 and Xerox Corp. v. Hawkes, 124 N.H. 610, 616 (1984)); see also Elliot, 109 N.H. at 485-86. Again, Evans argues that she has demonstrated a genuine issue of material fact as to whether Taco Bell breached implied warranties of merchantability and fitness for purpose by serving food handled by an employee infected by Hepatitis A while she was not wearing gloves, but offers nothing to connect this alleged breach to any

28

of her claimed physical injuries.  Like Evans's negligence and strict liability claims, her breach of warranty claim cannot proceed in the absence of any such evidence.  See Willard, 69 F. Supp. 2d at 274; Elliot, 109 N.H. at 485-86.

Evans also argues that she can recover what she paid for the allegedly unmerchantable and unfit goods under her breach of warranty theory.  N.H. Rev. Stat. Ann. § 382-A:2-714(2).  Her complaint, however, does not claim the cost of the goods purchased from Taco Bell as a category of loss sustained or damages sought by Evans.  In fact, the complaint expressly states that Evans "claims damages for physical pain, physical symptoms, fear and emotional distress."  Compl. ¶ 24.  Evans does not allege to have suffered economic losses of any kind in the complaint, whether in setting forth her breach of warranty claim or otherwise.  Cf. id. ¶ 25 (alleging that other class members "may have claims for medical bills, lost wages, lost time from school, and actual contraction of the Hepatitis A virus").  Moreover, at her deposition in this matter, Evans was asked, "Other than what you paid for [the] blood tests, are there any other out-of-pocket costs that you have occurred associated with the allegations in this lawsuit?"  Evans Dep. at 63.  Her

response was, "I don't remember."[18]  Id.

The First Circuit has held that a plaintiff's failure to "implicate the relevant legal issues in his complaint" with regard to a theory of recovery may prevent him from raising that theory in response to summary judgment.  McLane, Graf, Raulerson & Middleton, P.A. v. Rechberger, 280 F.3d 26, 38 (1st Cir. 2002); accord, e.g., Opals on Ice Lingerie v. Bodylines, Inc., 2002 WL 718850, at *4 (E.D.N.Y. Mar. 5, 2002) ("courts have consistently ruled that it is inappropriate to raise new claims for the first time in opposition to summary judgment") (quotation marks omitted).  As another district court in this circuit has recognized, this rule is necessary because "[f]airness dictates that the defendant[] be given a minimum degree of forewarning as to the underlying basis of the relief sought."  Ocaso, S.A., Compania de Seguros y Reaseguros v. P.R. Mar. Shipping Auth., 915 F. Supp. 1244, 1253 (D.P.R. 1996).  Accordingly, Evans's failure to mention, either in her complaint or in providing discovery as to her damages, that she was seeking to recover the cost of purchasing the allegedly unmerchantable and unfit goods prevents

---

[18]Evans's initial disclosures in this matter, which Taco Bell has submitted to the court together with its motion for summary judgment, also make no reference to the cost of the food or any other category of economic damages.  Cf. Fed. R. Civ. P. 26(a)(1)(C) (requiring "a computation of any category of damages claimed by the disclosing party . . . .")

her from avoiding summary judgment by claiming those damages now. Taco Bell is therefore entitled to summary judgment on Evans's breach of warranty claim.

### 4. The Consumer Protection Act Claim

New Hampshire's Consumer Protection Act prohibits, in relevant part, "any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." N.H. Rev. Stat. Ann. § 358-A:2. Evans suggests that Taco Bell engaged in such behavior through its "[l]ocal advertising," which gave her the "expect[ation] that the Derry restaurant operated in compliance with state food handling and safety requirements." Mem. Opp'n Mot. Summ. J. at 51. Although the discussion of the Consumer Protection Act claim in Evans's objection does not say how this expectation was defeated, the court assumes that, once again, she believes Taco Bell acted unfairly and deceptively by allowing the employees at its Derry location to handle food with their bare hands in spite of the statements in Taco Bell's advertising. Taco Bell argues that these circumstances do not amount to a violation of RSA 358-A:2. The court agrees.

As Evans recognizes, "'[t]o be actionable [under RSA 358-A:2], the objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and

31

tumble of the world of commerce.'" Mem. Opp'n Mot. Summ. J. at 51 (quoting Anheuser-Busch, Inc. v. Caught-on-Bleu, Inc., 2003 DNH 127, 2003 WL 21715330, at *6 (D.N.H. Jul. 22, 2003), aff'd, 105 Fed. Appx. 285 (1st Cir. 2004), cert. denied, 125 S. Ct. 1639 (2005)) (further internal quotation marks omitted). The New Hampshire Supreme Court has held that the statute's prohibition extends to misrepresentations made in the course of a business transaction. Snierson v. Scruton, 145 N.H. 73, 81 (2000) (applying RSA 358-A:2 to real estate agent's false statements about property on which plaintiffs reasonably relied in deciding to buy it). Evans also points out that RSA 358-A:2 itself defines deceptive acts or practices to include "[r]epresenting that goods or services have . . . characteristics, ingredients, uses, [or] benefits . . . that they do not have" and "[r]epresenting that goods . . . are of a particular standard, quality, or grade . . . if they are of another." N.H. Rev. Stat. Ann. §§ 358-A:2, V and VII.

Although Evans hints at a misrepresentation theory in her affidavit submitted in response to the summary judgment motion, she does not relate any statement by Taco Bell that its food meets the rigors of "state food safety and handling requirements" or, for that matter, any particular standards. Instead, she claims to have developed an expectation to this effect "based, in

32

large part, on representations made by Taco Bell in its national, regional and local advertising promoting the quality of Taco Bell restaurants generally and their food in particular."[19]  Evans Aff. ¶ 6.  Such a vague account of the content of Taco Bell's advertising simply cannot support a Consumer Protection Act claim based on Taco Bell's allegedly false statements.  See Kalik v. Abacus Exch., Inc., 2001 DNH 192, 2001 WL 1326581, at *8-*9 (D.N.H. Oct. 19, 2001) (granting summary judgment against RSA 358-A:2 claim premised on misrepresentations in absence of evidence of any material misstatements).  Because Evans does not offer any other theory supporting this claim, Taco Bell is entitled to summary judgment on it.

### 5.  The Breach of Fiduciary Duty Claim

---

[19]Evans's counsel has submitted a printout from Taco Bell's website as a purported example of the company's advertising, though Evans herself does not claim that she has ever seen the site or even that it resembles the advertising to which she was exposed.  In any event, the website itself contains no representations that Taco Bell adheres to any particular standards in preparing its food.  Instead, the site makes general statements like, "we take great pride and care to provide you with the best food and dining experience in the quick service restaurant business."  Mem. Opp'n Mot. Summ. J., Ex. 10, at 1. Such general claims to superiority, known as "puffery," do not amount to actionable representations.  See Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 38 (1st Cir. 2000) (noting that puffery cannot support false advertising claim).

33

Evans contends that a genuine issue of material fact exists as to whether Taco Bell owed her a fiduciary duty, based on her assertions that she placed "confidence in Taco Bell's assurances of quality and safety" and that "[t]he preparation of the subject food was exclusively in the control of [Taco Bell] at the time it was served in February 2004." Mem. Opp'n Mot. Summ. J. at 46. The court agrees with Taco Bell that this argument is frivolous.

"'A fiduciary relationship . . . exists wherever influence has been acquired and abused or confidence has been reposed and betrayed.'" Lash v. Cheshire County Sav. Bank, Inc., 124 N.H. 435, 437 (1984) (quoting Cornwell v. Cornwell, 116 N.H. 205, 209 (1976)). Contrary to Evans's sweeping construction, however, the term "confidence" in this context does not equate with simple reliance on another to perform a bargained-for service, but denotes "a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." Id. at 439 (emphasis added; internal quotation marks omitted).

Thus, fiduciary duties have been recognized as running from trustee to beneficiary, from guardian to ward, from agent to principal, from attorney to client, and among partners. Restatement (Second) of Trusts § 2 cmt. b (1959). It is obvious that the relationship between a fast food restaurant and its

34

patrons is not of this character, even if the patrons have come to depend on the restaurant for quality meals.  Cf. Schneider v. Plymouth State Coll., 144 N.H. 458, 462 (N.H. 1999) (recognizing college's fiduciary duty to student to prevent sexual harassment by faculty because "[t]he relationship between students and those that teach them is built on a professional relationship of trust and deference, rarely seen outside the academic community").  Evans does not provide any authority to the contrary.  Taco Bell is therefore entitled to summary judgment on her breach of fiduciary duty claim.

      6.   The Remaining Claims

Evans asserts claims entitled "vicarious liability" and "enhanced compensatory damages" as separate counts of her complaint.  Given the absence of a genuine issue of material fact tending to show any conduct on the part of Taco Bell's employees for which Evans can recover her claimed damages, see Part II.B.1, supra, the vicarious liability claim necessarily fails.  Similarly, as Evans acknowledges, enhanced compensatory damages are just that, i.e., "'simply the actual damages incurred, estimated by the more liberal rule that prevails in the case of malicious wrongs.'"  Mem. Opp'n Mot. Summ. J. at 52 n.11 (quoting Nollet v. Palmer, 2002 DNH 136, 2002 WL 1674379, at *2 (D.N.H.

35

July 18, 2002)) (further internal quotation marks omitted).
Because Evans has not shown a genuine issue of material fact as
to whether Taco Bell's allegedly wrongful actions caused her
claimed damages, she cannot recover enhanced compensatory
damages.  Accordingly, summary judgment must enter on these
claims as well.  Taco Bell's motion for summary judgment is
therefore granted in its entirety.


III. <u>Taco Bell's Motion for Sanctions</u>

Finally, Taco Bell seeks sanctions against Evans and her
counsel under Fed. R. Civ. P. 11(c)(1)(A) on the ground that her
"Rule 56(f) Objection to Defendant's Motion for Summary Judgment"
was presented in violation of Fed. R. Civ. P. 11(b)(1).  Evans
objects to sanctions because, first, she was not provided the
opportunity to withdraw or correct her motion afforded by Fed. R.
Civ. P. 11(c)(1)(A) and, second, the Rule 56(f) objection was not
in fact presented "for an improper purpose, such as to harass or
cause unnecessary delay or needless increase in the cost of
litigation" as prohibited by Fed. R. Civ. P. 11(b)(1).

Evans filed her 56(f) objection on April 22, 2005.
Treating the objection as a motion, Taco Bell filed its own
objection to it, accompanied by a memorandum of law, on April 28,

36

2005. The memorandum asked that Evans's "request for relief under Rule 56(f) be denied, that plaintiff be ordered to file its [*sic*] opposition to defendant's motion [for summary judgment] by a date certain and all Court costs and attorney's [*sic*] fees be taxed against the plaintiff." Mem. Obj. Mot. for Relief at 6.

More than two months later, the court issued an order denying Evans's motion for 56(f) relief. 2005 DNH 104, 2005 WL 1592984 (D.N.H. June 30, 2004). Noting that Taco Bell had requested fees and costs in its objection, the court stated:

> Insofar as Taco Bell seeks an order requiring Evans to pay its attorneys' fees incurred in connection with responding to the Rule 56(f) application, the request must be made through a separate motion. Fed. R. Civ. P. 11(c)(1)(A); L.R. 7.1(a)(1). Based on the foregoing analysis, however, it appears that Evans's Rule 56(f) request might have been presented "to cause unnecessary delay or needless increase in the cost of litigation" in violation of Rule 11(a)(b)(1). This gives the court particular concern in light of the history of this litigation and the prior admonitions to Evans's counsel by both the magistrate and the court itself. Accordingly, if Taco Bell wishes to pursue the issue of sanctions against Evans's counsel in connection with the Rule 56(f) objection, it shall do so by motion pursuant to Fed. R. Civ. P. 11(c)(1)(A). It is unfortunate that the resources of the court and the parties have had to expended on an issue that never should have been a problem in this case.

Id. at *7. Taco Bell filed its motion for sanctions on July 13, 2005, asking that the court order Evans to pay the $3,131 in attorneys' fees it claims to have expended in responding to the request for Rule 56(f) relief.

37

Rule 11(c)(1)(A) states, in relevant part, that a motion for sanctions "shall not be filed with or presented with the court unless, within 21 days after service of the motion . . . the challenged paper . . . is not withdrawn or appropriately corrected." This provision establishes "a type of 'safe harbor' in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position." Fed. R. Civ. P. 11 advisory committee's note (1993). Evans argues that, because Taco Bell did not serve her with its motion for sanctions before filing it, let alone twenty-one days in advance of that date, she has been deprived of Rule 11(c)(1)(A)'s safe harbor and that, as a result, the motion must be denied outright. See, e.g., Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 389-90 (4th Cir. 2004) (en banc); Elliot v. Tilton, 64 F.3d 213, 216 (5th Cir. 1995); 2 James Wm. Moore et al., Moore's Federal Practice § 11.22[1][b], at 11-40 (3d ed. 1997 & 2002 supp.).

In response, Taco Bell acknowledges that Evans did not get the benefit of the safe harbor provision, but rejoins that the First Circuit has not interpreted Rule 11(c)(1)(A) as stringently as other circuits have. See Nyer v. Winterthur Int'l, 290 F.3d 456, 460 n.6 (1st Cir. 2002) (noting that, while motion for sanctions in response to baseless motion to amend not served on

38

plaintiff's counsel before filing, he "had approximately three months to reconsider and withdraw the motion to amend" before it was denied as moot "but chose not to do so," and therefore "the purposes of the safe harbor provision could no longer be effectuated because [the attorney] had lost his opportunity to reverse course"); Silva v. Witschen, 19 F.3d 725, 729 n.4 (1st Cir. 1994) (treating defense attorney's comments to plaintiff's counsel, in response to receiving copy of complaint before filing, that suit was unjustified and defendants intended to seek attorneys' fees, as "substantially equivalent warning" to safe harbor). Nyer, however, rejected the appellant's safe harbor argument because he had failed to raise it in response to the motion for sanctions in the district court, 290 F.3d at 460, while in Silva the sanction was imposed pursuant to the former version of Rule 11, which lacked any safe harbor provision.[20] 19 F.3d at 727-29. Thus, neither case squarely addressed whether sanctions may be imposed on a motion that was not served at least twenty-one days before filing, as occurred here. In this court's view, the dicta from Nyer and Silva cannot overcome the weight of contrary authority and the clear language of Rule 11(c)(1)(A)

[20]The Silva court nevertheless discussed the current version of Rule 11 because the appellant argued that it should be retroactively applied in his case. 19 F.3d at 727-29.

itself.  Because Evans did not get the benefit of the safe harbor provision, Taco Bell's motion for sanctions must be denied.

In the absence of this procedural problem, however, the court would not hesitate to impose the sanctions requested by Taco Bell.  Despite submitting an eleven-page affidavit in support of Evans's request for Rule 56(f) relief, her counsel, Peter Hutchins, offered virtually no explanation of how the discovery outstanding at the time would have affected the outcome of Taco Bell's motion for summary judgment.  2005 WL 1592984, at *6-*7.  Furthermore, the objection itself contained the assertions that transcripts of depositions which had already been taken at that point would not be available until twenty days later, and that Evans's counsel should thereafter be entitled to an additional two or three weeks to review and index the transcripts before having to respond to Taco Bell's summary judgment motion.  The court has previously noted that these assertions strike the court as disingenuous.  Id. at *6 & n.14.  Because three of the four depositions forming the basis of the request for Rule 56(f) relief had already occurred before the request was filed, and because Hutchins could come up with no explanation as to the relevance of any of the other discovery outstanding at that point, the apparent purpose of the request was to cause unnecessary delay in the resolution of the motion

40

for summary judgment, or to cause Taco Bell to expend additional attorneys' fees in responding, in violation of Rule 11(b)(1).

Furthermore, Evans's lawyers on a number of occasions during this litigation have engaged in conduct that included a chronic disregard for the Local Rules and motion practice that the magistrate has deemed frivolous. See note 1, supra, and accompanying text; 326 F. Supp. 2d 214, 219 (D.N.H. 2004) (recounting magistrate's rulings on Evans's first motion to remand and her objection to the pro hac vice admission of one of Taco Bell's attorneys). In light of this history, and the nature of the Rule 11 violation itself, payment of Taco Bell's attorneys' fees in responding to the request for Rule 56(f) relief would have been the appropriate sanction. As this court has stated time and time again, all counsel who appear before it are expected to be familiar with the Local Rules and to conduct their practice in conformity therewith. When counsel fail to do so, the result is often the unnecessary expenditure of time and resources by the court, opposing counsel, and the parties.

## Conclusion

For the foregoing reasons, Taco Bell's motion for summary judgment (document no. 43) is GRANTED. Taco Bell's motion for sanctions (document no. 58) is DENIED. Taco Bell's motion to

41

strike (document no. 63) is DENIED as moot.  Evans's motion for class certification (document no. 47) is also DENIED as moot. The clerk shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

September 23, 2005
cc:  Bruce G. Tucker, Esquire
     Andrew W. Serell, Esquire
     Peter E. Hutchins, Esquire